EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Roberto Méndez, Bárbara Méndez, et als. | Certiorari |
| Peticionarios | 2005 TSPR 101 |
| vs. | 164 DPR \_\_\_\_ |
| Fundación Esposos Luis Méndez Vaz y María Bagur, Inc. et als. | |
| Recurridos | |

Número del Caso: CC-2003-91

Fecha: 11 de julio de 2005

Tribunal de Apelaciones:

Circuito Regional I de San Juan, Panel IV

Juez Ponente:

Hon. Carlos Rodríguez Muñiz

Abogado de la Parte Peticionaria:

Lcdo. José Dorta Lucca
Lcdo. Raúl Caballero Meléndez

Abogado de la Parte Recurrida:

Lcdo. Roberto Lefranc Morales

Materia: Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Roberto Méndez, Bárbara
Méndez, et als.

    Peticionarios

       vs.                  CC-2003-91     CERTIORARI

Fundación Esposos Luis Méndez
Vaz y María Bagur, Inc. et
als.

    Recurridos

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO REBOLLO LÓPEZ

San Juan, Puerto Rico 11 de julio de 2005

El 25 de marzo de 1985 el señor Eduardo Méndez Bagur, en unión a los licenciados Rafael Martínez Álvarez, Jr. y Alfredo Martínez Álvarez, incorporó la Fundación Esposos Luis Méndez Vaz y María Bagur, Inc., en adelante el Museo.[1] De igual forma, el 4 de septiembre de 1987 incorporó la Fundación Eduardo Méndez Bagur, Inc., en adelante la Fundación, sustituyendo al licenciado Rafael Martínez Álvarez, Jr. por el licenciado José A. Fernández Paoli como tercer incorporador.

---

[1] La referida entidad es también conocida como el Museo Esposos Luis Méndez Vaz y María Bagur, Inc.

Los artículos de incorporación de las referidas Corporaciones establecen las normas para su organización y manejo y, también, rigen lo referente al nombramiento de la junta de directores que habrá de operar las mismas. A esos efectos, los aludidos artículos disponen que los negocios y actividades de la corporación serían manejados por una Junta de Fideicomisarios[2], a ser electa por los incorporadores en la primera reunión, y, luego, por los miembros de la corporación. De igual forma, establecen que los oficiales de la corporación serían electos en la primera reunión de fideicomisarios, de entre ellos mismos, y por un término de un año o hasta que su sucesor fuera electo.

En lo que respecta específicamente a la remuneración de los fideicomisarios, los artículos de incorporación de ambas entidades indican que los mismos "no recibirían compensación alguna" por sus servicios como tampoco "ninguna parte de los beneficios netos de la corporación" sería distribuida a, o redundaría, en beneficio de ninguno de éstos ni de los oficiales de la corporación.[3]

---

[2] El artículo SEXTO de los artículos de incorporación de ambas entidades dispone que:

> ... los incorporadores elegirán tres (3) fideicomisarios que serán electos por un término de tres (3) años cada uno sin impedimento a ser reelectos por cuantos términos posteriores fuesen menester.

[3] El artículo SEXTO de los artículos de incorporación de ambas entidades dispone que los oficiales de la
(Continúa . . .)

Años más tarde, el 13 de junio de 1990, el señor Eduardo Méndez otorgó un testamento abierto ante la notario Laura A. Dahdah de Surillo. En el mismo nombró como albacea al licenciado Rafael Martínez Álvarez, Jr. En cuanto a la disposición de sus bienes, nombró como su única heredera universal a la Fundación Eduardo Méndez Bagur[4]. Dispuso que del beneficio neto anual que produjeran los bienes de esta Fundación --luego de hacer las reservas necesarias para gastos de conservación y/o de emergencia-- se le entregaría mensualmente la suma de veinte mil ($20,000.00) dólares al Museo para sus reparaciones y mantenimiento.[5] Dispuso, además, que una vez pagada esta suma de dinero, el ingreso neto restante debía ser distribuido entre sus parientes colaterales, mientras vivieran, en unas proporciones determinadas[6].

---

corporación consistirán de a) un Presidente, b) un Secretario, y c) un Tesorero.

[4] Dicha fundación operaría en Puerto Rico para fines religiosos, caritativos, científicos, literarios, incluyendo las artes, y para que invirtiera los bienes heredados en forma productiva, y con el ingreso llevara a cabo los objetivos para los cuales se había organizado.

[5] El Museo se creó para establecer, operar y mantener un museo comunal en una propiedad del finado localizada en la calle Cuevillas en Miramar.

[6] A esos efectos dispuso el testador que las proporciones serían las siguientes:

   a) Una octava (1/8) parte a distribuirse en parte iguales entre los hijos de su hermano, Roberto Méndez Bagur, nombrados, Roberto, Bárbara, Ramón, Carmen Milagros, Muzo, Lino, Donato, Zula,

(Continúa . . .)

Eduardo Méndez Bagur falleció el 13 de septiembre de 1992. Al momento de su muerte estaba soltero y no tenía descendientes, ni ascendientes; solamente le sobrevivieron parientes colaterales, los cuales habían sido nombrados legatarios en su testamento.

Así las cosas, el 27 de agosto de 1993, los antes mencionados parientes colaterales del señor Eduardo Méndez Bagur presentaron una demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan [7], contra ambas corporaciones y el licenciado Rafael Martínez Álvarez, Jr. como albacea, contador partidor y administrador del caudal, según designado por el señor Méndez Bagur. En la referida acción se impugnó la validez del testamento

---

Alicia, Ivette, Carlos, Roberta, Gladys, Jorge, Luis y Juan Méndez.

b) Una cuarta (1/4) parte a Rosa María García Méndez.

c) Una octava (1/8) parte a su hermana María Luisa Méndez Bagur, y de haber ésta fallecido, a distribuirse en parte iguales entre las hijas de ésta nombradas, Bernice García Méndez y Rosa García Méndez.

d) Una octava (1/8) parte a distribuirse en parte iguales entre los hijos de su hermana fallecida, Monserrate Méndez Bagur, a saber: Luis González Méndez y Milagros González Méndez.

e) Una octava (1/8) parte a distribuirse en parte iguales entre los hijos de su hermano fallecido, Bienvenido Méndez Bagur, nombrados: Luis y Maricusa Méndez.

f) Una octava (1/8) parte a distribuirse en parte iguales entre los hijos de Francisco Méndez Bagur,nombrados: María Gerardina Méndez Isern, Ana Iris Méndez Isern, Aliceia Mercedes Isern, Zita Teresa Méndez Isern y Luis Eduardo Méndez Isern.

g)

[7] Roberto Méndez y otros v. Fundación Eduardo Méndez Bagur Incorporado y otros, Civil número KAC93-1225 (803).

otorgado por el señor Eduardo Méndez Bagur[8], y se solicitó del Tribunal que ordenara la apertura de la sucesión intestada del finado. Además, se solicitó que se detuvieran los traspasos, ventas y arrendamientos de propiedades del testador a favor de las entidades creadas. Se solicitó, además, que se detuvieran los actos que llevaba a cabo tanto el albacea, como la Junta de Directores de ambas fundaciones y que se le ordenara al albacea y a las fundaciones permitir la participación de los demandantes, o una representación de los mismos, en la toma de decisiones sobre la administración del caudal relicto.

Luego de varios incidentes y trámites procesales, y a solicitud de la parte demandada, el 31 de agosto de 1994 el foro primario dictó sentencia sumaria[9], validando el

---

[8] En la referida demanda se alegó, además, que al otorgarse el testamento existía una relación entre la notario y los testigos que impedía que los mismos comparecieran a dicho otorgamiento, lo cual invalidaba el testamento. Se alegó, además, que la fundación designada en el testamento como heredera universal era una *mortis causa* a crearse luego del otorgamiento del testamento abierto y con fines pecuniarios. Se indicó que aunque en el testamento no se expresaba que fuera la voluntad del testador crear un fideicomiso así se autoproclamaba la Fundación, lo cual violaba las disposiciones del Código Civil. Esto en virtud de que no se puede constituir un fideicomiso a nombre de una persona que no existe a menos que fuera a nombre de hijos futuros del fideicomitente o uno sin fines pecuniarios.

[9] El foro primario estimó que las controversias que suscitaban las alegaciones de las partes se circunscribían a determinar si:

(Continúa . . .)

testamento otorgado por el señor Eduardo Méndez Bagur.[10] El referido foro determinó, además, que el testador le había negado a "los demandantes participar en la toma de decisiones respecto a la administración del caudal relicto."

Por último, el tribunal de instancia resolvió que había sido la intención del testador establecer un fideicomiso tácito, sin fines de lucro y por tiempo indeterminado. De esta forma, dispuso que:

> "...El mandato del testador, Don Eduardo Méndez Bagur, a tenor con el cual se transmitieron sus bienes a la Fundación, para que ésta dispusiera de ellos conforme lo ordenó

---

a) ¿Existía a la fecha del otorgamiento alguna prohibición que impedía al Notario otorgar la escritura de testamento abierto?
b) ¿Existía a la fecha del otorgamiento alguna prohibición que impedía comparecer como testigos a las personas que así lo hicieron?
c) ¿Contiene el testamento abierto otorgado por Don Eduardo Méndez Bagur algún defecto legal que amerite se anule el mismo?
d)

[10] El foro primario determinó, además, que al otorgarse el testamento no existía ningún impedimento por parte de los testigos para comparecer como tales, ni de la notario para otorgar dicho testamento. A esos efectos, resolvió que no surgía de las alegaciones de la demanda que existiera una relación directa entre la notario autorizante y los testigos del testamento por ella autorizado. Ninguno de los testigos ni era empleado de ella, ni era socio de ella, ni pariente de ella dentro del cuarto grado de consanguinidad o segundo de afinidad. Dichos testigos eran empleados de una entidad corporativa separada e independiente del bufete. Determinó, además, que el testador no tuvo la intención de crear una nueva corporación en su testamento de 1990, sino que su verdadera voluntad fue que la corporación inscrita en 1987 bajo el nombre de Fundación Méndez Bagur, Inc., pudiera operar tal y como lo había concebido adquiriendo la universalidad de sus bienes y que dispusiera del ingreso de éstos, conforme se especificaba en el testamento.

en su testamento, convierte al <u>testador</u> en <u>fideicomitente</u>, y la <u>Fundación Eduardo Méndez Bagur</u> en <u>fiduciaria</u>, según dispone el artículo 834 del Código Civil 31 L.P.R.A. § 2541. Los <u>demandantes-legatarios</u>, son los <u>beneficiarios o fideicomisarios</u> del mandato que lleva a cabo la Fundación."

Luego de emitida la sentencia[11] --la cual advino final y firme-- el 1 de abril de 1995 los licenciados Rafael Martínez, Jr., Alfredo Martínez Álvarez y José A. Fernández Paoli --quienes se autonombraron fideicomisarios de la Fundación-- convocaron una reunión a los fines de considerar la posibilidad de <u>enmendar</u> el certificado de incorporación de la Fundación para sustituir cualquier referencia a la palabra "fideicomisario" por la de "fiduciario". Ello bajo el entendido de que "<u>por error u omisión en la redacción del Certificado de Incorporación se utilizó la palabra incorrecta</u>". Luego de varios trámites procesales, el 18 de abril de 1995 [12] --en una reunión a esos efectos-- se aprobaron unánimemente las aludidas enmiendas y se revisó el reglamento para conformarlo con las mismas.[13]

---

[11] En el entre tanto, el 18 de noviembre de 1994 el Albacea Testamentario, Rafael Martínez Álvarez, Jr. radicó una petición Ex-parte sobre Cuentas Finales de la Sucesión en el Tribunal Superior, Sala de San Juan. Civil número KAC-94 1747(902).

[12] Mismo día en que se aprobaron las cuentas finales del albacea.

[13] De igual forma se aprobaron las aludidas enmiendas al Certificado de Incorporación del Museo y a su reglamento.

En virtud de lo anterior, el 26 de abril de 1995 Rafael Alfredo Martínez Álvarez, Jr., Alfredo Martínez Álvarez y José Fernández Paoli, presentaron ante el Departamento de Estado un Certificado de Enmienda aprobando las referidas enmiendas y cambios al Certificado de Incorporación de la Fundación.

Inconformes con tal proceder, el 30 de agosto de 1995 los legatarios presentaron ante el Tribunal de Primera Instancia, Sala Superior de San Juan, una segunda demanda, esta vez contra el Museo, el licenciado José A. Fernández Paoli[14], el Lcdo. Alfredo Martínez Álvarez[15], Juan Pérez[16], el Lcdo. Rafael Martínez Álvarez, Jr.[17] y Martinal Real State Corp[18]. Luego de iniciado el pleito, la referida demanda fue enmendada para incluir a la señora Rosa María García Méndez como codemandada debido a que ésta había expresado su deseo e intención de no formar parte en el pleito como demandante.

Los demandantes legatarios alegaron, en síntesis, que como eran ellos los fideicomisarios de la Fundación,

---

[14] Por alegadamente ser Secretario, director u oficial del Museo.

[15] Como incorporador, director u oficial del Museo.

[16] Como director u oficial, que al momento de la presentación de la demanda se desconocía su nombre.

[17] Junto con el Lcdo. Fernández Paoli, el Lcdo. Alfredo Martínez Álvarez como incorporadores, administradores u oficiales de la Fundación.

[18] Alegadamente la administradora de la totalidad o parte de las propiedades de la Fundación Eduardo Méndez Bagur.

tenían derecho a administrar la Fundación y el Museo; esto en virtud de que en los artículos de incorporación originales se estableció que una Junta de Fideicomisarios sería la que administraría dichas corporaciones. Alegaron, además, que ellos --los legatarios demandantes-- se habían reunido y de forma unánime habían elegido a la Junta de Fideicomisarios.[19] En virtud de lo anterior, solicitaron la entrega inmediata de toda la documentación existente en cuanto a los bienes de la Sucesión de Eduardo Méndez Bagur, el Museo, el reconocimiento y validación de los nombramientos de la junta de fideicomisarios, y una orden judicial para la entrega de la dirección y manejo de las entidades.

Posteriormente, la parte demandada presentó ante el foro primario una moción de desestimación, en la cual expuso que la parte demandante pretendía dilucidar en ese pleito lo ya resuelto o que se pudo haber resuelto en el pleito anterior. En vista de ello, solicitó se desestimara la acción por el fundamento de cosa juzgada. Luego que la parte demandante presentara su oposición a la aludida moción, el foro primario denegó la misma mediante resolución a esos efectos. Concluyó que no estaban presentes todos los requisitos para la aplicación de la doctrina de cosa juzgada.

---

[19] A saber eligieron a Alicia Méndez Bagur como presidente, a Miguel Luis González Méndez como Vicepresidente y a Luis Méndez Torres como tesorero.

Así las cosas, el 23 de mayo de 1997, la parte demandante presentó una solicitud de sentencia sumaria ante el foro primario, la cual fue denegada. El tribunal de instancia determinó que existía controversia --según lo establecido en los artículos de incorporación y lo dispuesto en el testamento abierto-- sobre si había un error en la redacción de los artículos de incorporación de la Fundación al expresarse que los negocios y actividades de ésta se manejarían por una junta de fideicomisarios, en lugar de fiduciarios.

Finalmente, se señaló la vista en su fondo del caso; desfilada la prueba de la parte demandante, y luego de escuchar los argumentos de las partes, el foro primario en corte abierta acogió una moción de desestimación presentada por la parte demandada, a tenor con las disposiciones de la Regla 39.2(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 39.2.[20] Conforme a lo anterior,

---

[20] La referida Regla dispone en su inciso (c):

(c) Después que el demandante haya terminado la presentación de su prueba, el demandado, sin renunciar al derecho de ofrecer prueba en el caso de que la moción sea declarada sin lugar, podrá solicitar la desestimación, fundándose en que bajo los hechos hasta ese momento probados y la ley, el demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra el demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. A menos que el tribunal en su orden de desestimación lo disponga de otro modo, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se

(Continúa . . .)

emitió <u>sentencia</u> en la que resolvió que <u>no eran "los</u> <u>demandantes las personas designadas por el testador para</u> <u>dirigir y administrar la Fundación"</u>. Indicó el foro de instancia que en los artículos de incorporación se estableció que "(e)l número de miembros de esta asociación <u>estará limitado a los tres "fideicomisarios aquí</u> <u>mencionados"</u>. Señaló que en los artículos de incorporación sólo se llamaba por nombre y apellido a tres personas; siendo éstos el finado Eduardo Méndez Bagur y los licenciados Alfredo Martínez Álvarez y Rafael Martínez Álvarez, Jr.

En virtud de lo anterior, concluyó el referido foro que en los artículos de incorporación se catalogó, por error, como "fideicomisarios" a las tres personas antes mencionadas, ya que según lo dispuesto por el Artículo 834 del Código Civil, 31 L.P.R.A. § 2541, la persona que dispone de los bienes conforme a las instrucciones del fideicomitente es llamado fiduciario.

Inconforme con tal determinación la parte demandante acudió, vía recurso de apelación, ante el Tribunal de Apelaciones. Alegó, en síntesis, que la decisión del foro primario violentaba la decisión del juez en el primer caso e interpretaba el testamento del finado diferente a lo que interpretó éste en el primer caso, decisión que constituye

---

hubiere dictado por falta de jurisdicción, o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.

cosa juzgada y también constituye un cambio a la última voluntad del testador.[21]

La parte demandada presentó su oposición al recurso de apelación. Alegó, entre otras cosas, que la parte demandante había incumplido con el Reglamento del Tribunal de Circuito de Apelaciones debido a que había incluido en el apéndice copia de prueba ofrecida pero no admitida por el foro primario.

Mediante sentencia a esos efectos, el 30 de septiembre de 2002, el Tribunal de Apelaciones revocó la determinación del foro primario. Al fundamentar su conclusión, el foro apelativo expresó que el Tribunal de Instancia actuó sin jurisdicción, al alterar lo dispuesto en el caso Roberto Méndez y otros v. Fundación Eduardo Méndez Bagur Incorporado y otros, civil número KAC93-1225

---

[21] La parte demandada presentó ante el foro apelativo intermedio una moción de desestimación. En la misma expuso que la parte demandante no cumplió con la ley y el reglamento del aludido foro apelativo al no incluir documentos esenciales en el apéndice del recurso de apelación, razón por la cual el tribunal carecía de jurisdicción. La referida moción fue denegada por el foro apelativo intermedio bajo el fundamento de que los documentos omitidos no eran esenciales para resolver el recurso ante su consideración.

Así las cosas, la parte demandada presentó ante el foro apelativo intermedio una segunda moción de desestimación alegando que la parte demandante había incumplido con las disposiciones de la Regla 19 y 20 del Reglamento del Tribunal de Circuito de Apelaciones, toda vez que la parte demandante no había preparado y sometido un proyecto de exposición narrativa de la prueba oral pertinente al recurso. El tribunal apelativo denegó la aludida moción y emitió una orden dirigida a la parte demandante para que presentara un proyecto de exposición narrativa de la prueba oral pertinente a su recurso de apelación.

(803), lo cual, según expresó, era cosa juzgada y la ley del caso entre las partes.

Oportunamente, la parte demandada presentó ante el foro apelativo intermedio una moción de reconsideración. Denegada la misma por el referido foro y aún insatisfecho con la referida determinación, la parte demandada recurrió —vía *certiorari*— ante este Tribunal el 12 de febrero de 2003. Alegó como señalamientos de error que:

> ...La sentencia del Tribunal Apelativo es contraria a derecho, y en particular a lo resuelto por este tribunal en el caso Dávila v. Agrait, 116 D.P.R. 549 (1985).

> ...Erró el Tribunal Apelativo al resolver que la sentencia del Tribunal de Primera Instancia alteró una sentencia anterior de un litigio entre las partes.

> ...Los artículos de Incorporación originales tienen un error en su redacción.

> ...El Tribunal Apelativo permitió que la parte demandante sometiera con su apelación evidencia que no es parte de los autos del caso.

Expedimos el recurso. Contando con la comparecencia de todas las partes, y estando en condición de resolver el mismo, procedemos a así hacerlo.


I

Como es sabido, en nuestro ordenamiento rige la doctrina de cosa juzgada[22], cuya base estatutaria es el

---

[22] Cosa juzgada es "lo ya resuelto por fallo firme de un Juez o Tribunal competente, y lleva en sí la firmeza de su irrevocabilidad." J.M. Manresa, Comentarios al Código

(Continúa . . .)

Artículo 1204 del Código Civil, 31 L.P.R.A. § 3343.[23] Dicha

doctrina tiene el propósito de dar la debida dignidad a

las actuaciones de los tribunales. Pagán Hernández v.

U.P.R., 107 D.P.R. 720 (1978); Pérez v. Bauzá, 83 D.P.R.

220, 225 (1961). A través de la misma, se logra

"impartirle finalidad a los dictámenes judiciales de

manera que las resoluciones contenidas en los mismos

concedan certidumbre y certeza a las partes en litigio".

Parilla v. Rodríguez y otros, res. el 12 de noviembre de

2004, 2004 T.S.P.R. 173; Worlwide Food Dis., Inc. v. Colón

_____

Civil Español, Ed. Reus, T. VIII, Vol. 2, 6ta. ed. rev.,
Madrid, España, 1967, pág. 278

[23] El referido artículo, en lo aquí pertinente, establece
que:

> Contra la presunción de que la cosa juzgada es
> verdad, sólo será eficaz la sentencia ganada en
> juicio de revisión.
>
> Para que la presunción de cosa juzgada surta
> efecto en otro juicio, es necesario que entre el
> caso resuelto por la sentencia y aquél en que
> ésta sea invocada, concurra la más perfecta
> identidad entre las cosas, las causas, las
> personas de los litigantes y la calidad con que
> lo fueron.
>
> En las cuestiones relativas al estado civil de
> las personas y en las de validez o nulidad de
> las disposiciones testamentarias, la presunción
> de cosa juzgada es eficaz contra terceros,
> aunque no hubiesen litigado.
>
> Se entiende que hay identidad de personas
> siempre que los litigantes del segundo pleito
> sean causahabientes de los que contendieron en
> el pleito anterior, o estén unidos a ellos por
> vínculos de solidaridad o por los que establece
> la indivisibilidad de las prestaciones entre los
> que tienen derecho a exigirlas u obligación de
> satisfacerlas.

et al., 133 D.P.R. 827 (1993); Pagán Hernández v. U.P.R., ante.

En virtud de lo anterior, este Tribunal ha reconocido que la aludida doctrina es una valiosa y necesaria para el buen funcionamiento de nuestro sistema judicial y para el tráfico jurídico. Parilla v. Rodríguez y otros, ante. A través de la misma se protegen "intereses procesales importantes para nuestro sistema de administración de justicia". Ibíd. A tales efectos, se protege el interés del Estado en ponerle fin a los litigios y el de los ciudadanos de no ser sometidos en múltiples ocasiones a los rigores de un proceso judicial. Parilla v. Rodríguez y otros, ante; Mun. de San Juan v. Bosque Real, S.E., res. el 4 de marzo de 2003, 2003 T.S.P.R. 31; Pagán Hernández v. U.P.R.; ante, a la pág. 732 (1978); Pérez v. Bauzá, ante.

Para que pueda aplicarse la doctrina de cosa juzgada tiene que concurrir entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Art. 1204 del Código Civil, supra; Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827 (1993); Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212 (1992); Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533 (1975).

El efecto de la aplicación de la doctrina de cosa juzgada es "que la sentencia dictada en un pleito anterior

impide que se litiguen en un pleito posterior entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior". Mun. de San Juan v. Bosque Real, S.E., res. el 4 de marzo de 2003, 2003 T.S.P.R. 31; Banco de la Vivienda v. Carlo Ortiz, 130 D.P.R. 730, 739 (1992) citando a Pagán Hernández v. U.P.R., ante, a las págs. 732-733; Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 950 (1972).

Este Tribunal ha señalado que dicha doctrina "no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso". Mun. De San Juan v. Bosque Real S.E., ante; Pagán Hernández v. U.P.R., ante, a la pág. 737; Pérez v. Bauzá, ante a la pág. 226. Conforme con lo anteriormente expresado, hemos indicado que la aludida doctrina no debe ser aplicada de forma rígida ni automática. Parilla v. Rodríguez y otros, ante; Banco de la Vivienda v. Carlo Ortiz, ante a la pág. 739. Esto es, los tribunales deberán abstenerse de aplicar la misma cuando al hacerlo se derrotan o se "desvirtúan los fines de la justicia, produce resultados absurdos o cuando se plantean consideraciones de interés público". Meléndez Soberal v. García Marrero, 2002 T.S.P.R. 127, res el. 12 de septiembre de 2002, citando a Pagán Hernández v. U.P.R., ante, a la pág. 736; Millán v. Caribe Motors

Corp., ante, a la pág. 509; Feliciano Ruiz v. Alfonso Develop. Corp., 96 D.P.R. 108, 114 (1968); P.R.T.C. v. Unión Indep. Emp. Telefónicos, 131 D.P.R. 171, 194 (1992).

No obstante lo anteriormente expresado, hemos indicado que "no se favorece el reconocimiento y la aplicación liberal de excepciones a la doctrina de cosa juzgada ante el riesgo de que se afecte el carácter de finalidad de las controversias adjudicadas". Parilla v. Rodríguez y otros, ante; Ramos González v. Félix Medina, 121 D.P.R. 312, 339 (1988). De esta forma, evitamos se propicie la "relitigación masiva de las controversias judiciales resueltas". *Ibid.*

Por otro lado, este Tribunal ha reconocido la aplicación en nuestro ordenamiento de la figura jurídica del impedimento colateral por sentencia, como vertiente o modalidad de la antes mencionada doctrina de cosa juzgada. Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 464 (1996); A & P Gen. Contractor v. Asoc. Caná, 110 D.P.R. 753, 762 (1981).

Hemos expresado que el impedimento colateral por sentencia opera "cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final ... [y] tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción

distintas".[24] Fatach v. Triple S, Inc., 147 D.P.R. 882
(1999); citando a A & P Gen. Contractors v. Asoc. Caná,
110 D.P.R. 753, 762 (1981).

La aludida figura jurídica persigue los mismos
propósitos que la doctrina de cosa juzgada; a saber, se
protege a los litigantes contra lo que representa
defenderse o probar sus reclamaciones en repetidas
ocasiones tratándose de la misma controversia; promover la
economía judicial y administrativa al evitar litigios
innecesarios y evitar decisiones inconsistentes. Suárez
Morales v. E.L.A, res. el 28 de mayo de 2004, 2004
T.S.P.R. 84; Rodríguez Rodríguez v. Colberg, 131 D.P.R.
212, 219 (1992); A & P Gen. Contractor v. Asoc. Caná, 110
D.P.R. 753, 762 (1981).

No obstante lo anterior, la doctrina de impedimento
colateral "se distingue de la cosa juzgada debido a que no
es necesario que se dé el requisito de identidad de causas
necesario para aplicar la segunda". Rodríguez Rodríguez v.
Colberg, 131 D.P.R. 212, 219 (1992); Pereira v. Hernández,
83 D.P.R. 160 (1961).

---

[24] Existen dos modalidades del impedimento colateral por
sentencia; a saber la ofensiva y la defensiva. En la
primera, un demandante le impide al demandado litigar otra
vez los asuntos que previamente litigó y perdió frente a
otra parte. En cambio, la segunda modalidad surge cuando
un demandado impide a un demandante que litigue otra vez
asuntos que previamente litigó y perdió frente a otra
parte. Fatach v. Triple S, Inc., 147 D.P.R. 882, 890
(1999); A & P Gen. Contractors v. Asoc. Caná, ante, pág.
758.

II

Los codemandados peticionarios aducen que erró el foro apelativo intermedio al resolver que la sentencia emitida por el Tribunal de Primera Instancia el 20 de febrero de 2001 <u>alteró</u> la sentencia emitida en el caso <u>Roberto Méndez y otros</u> v. <u>Fundación Eduardo Méndez Bagur Incorporado y otros</u>, civil número KAC93-1225 (803). A esos efectos, argumentan que en la sentencia del 20 de febrero de 2001 lo único que se resolvió fue que existía un error en los artículos de incorporación de la Fundación, lo cual, a su entender, no cambió el fallo del pleito anterior ya que en el mismo lo que se resolvió fue la validez del testamento y la validez de la creación de un fideicomiso tácito. <u>Les asiste la razón</u>; veamos por qué.

Según surge del expediente, en el primer pleito los legatarios demandantes, entre otras cosas, impugnaron la validez del testamento otorgado por el señor Eduardo Méndez Bagur y, además, solicitaron participación en la administración de los bienes del caudal del finado.

Luego de los trámites de rigor, el foro primario determinó, mediante la sentencia del 31 de agosto de 1994 --la cual es final, firme e inapelable-- que el testamento otorgado por el señor Eduardo Méndez Bagur era válido y, a su vez, que la voluntad del testador había sido crear un fideicomiso tácito. Conforme a lo anterior, resolvió que el testador era el fideicomitente, la Fundación la

fiduciaria y los demandantes los beneficiarios o fideicomisarios del referido fideicomiso.

Posteriormente, los legatarios demandantes presentaron un <u>nuevo</u> pleito, en el cual alegaron que --según su interpretación de los artículos de incorporación de la Fundación y el Museo-- eran ellos las personas indicadas para administrar ambas entidades. A esos efectos, solicitaron que el foro primario emitiera una orden para obligar a los demandados a permitirles formar parte de la junta de directores de ambas entidades.

Surge de lo anterior que este caso --aunque está relacionado con el primer pleito-- <u>trata sobre una controversia distinta</u>. Es una causa de acción separada en la cual la evidencia necesaria para dilucidar la controversia es diferente a la examinada en el primer pleito. <u>Es decir, en este segundo pleito lo que está en controversia es la interpretación de los documentos corporativos del Museo y de la Fundación y en el primer pleito lo que se examinó e interpretó fue la validez del testamento del señor Eduardo Méndez Bagur</u>.

Conforme a lo anterior, <u>podemos concluir que dichos pleitos versan sobre controversias distintas y separadas</u>. En el primer pleito se solicitó la participación de los demandantes como legatarios en la toma de decisiones que realizaba el Lcdo. Rafael Martínez Álvarez, Jr. como albacea, contador partidor y administrador. En el presente caso lo que se solicita es que se pongan en vigor los

artículos de incorporación y reglamentos de la Fundación y el Museo donde supuestamente son los fideicomisarios las personas designadas para administrar.

En virtud de lo anterior, resolvemos que el foro primario tenía jurisdicción para atender la controversia planteada debido a que a través de la solución de la misma no se alteró en forma alguna la determinación del Tribunal de Instancia en el pleito anterior. En vista de ello, es forzoso concluir que erró el Tribunal de Apelaciones al resolver que aplicaba la doctrina de cosa juzgada al presente caso.

### III

Como tercer señalamiento de error, señalan los peticionarios, en síntesis, que incidió el Tribunal de Apelaciones al negarse a validar la determinación del Tribunal de Primera Instancia de que los artículos de incorporación de la Fundación tenían un error en su redacción. Les asiste la razón.

En el primer pleito el foro primario estableció que fue la voluntad del testador que los legatarios demandantes, ahora recurridos, fueran los fideicomisarios o beneficiarios de la Fundación. Es decir, que había sido la voluntad del señor Eduardo Méndez Bagur garantizar que sus parientes colaterales se beneficiaran del ingreso neto de la Fundación.

De igual forma, el foro primario resolvió que había sido la voluntad del testador negarle a los legatarios demandantes participar en la toma de decisiones respecto a la administración del caudal relicto, lo cual, a su vez, constituyen los bienes de la Fundación ya que la misma fue la heredera universal de los bienes del testador.

Por otro lado, en lo que respecta a la Fundación, el foro primario determinó que había sido la voluntad del testador que la misma fuera la fiduciaria de los bienes fideicomitidos.

Conforme a las antes mencionadas determinaciones del foro primario en el caso Roberto Méndez y otros v. Fundación Eduardo Méndez Bagur Incorporado y otros, civil número KAC93-1225 (803), el Tribunal del Primera Instancia en el caso ante nos determinó que existía un error en los artículos de incorporación. Es correcta dicha determinación.

En los artículos de incorporación de ambas entidades --los cuales fueron redactados estando en vida el testador y los cuales él firmó-- se establece que las mismas estarían regidas por una junta de fideicomisarios, la cual llevaría a cabo todos los negocios y actividades de las corporaciones. De igual forma, en los referidos artículos se establece categóricamente que los fideicomisarios no pueden recibir compensación alguna por sus servicios y tampoco pueden recibir ninguna parte de los beneficios de la corporación.

Teniendo conocimiento de lo establecido en los referidos artículos de incorporación, años más tarde el señor Eduardo Méndez Bagur otorgó su testamento, en el cual nombró a sus parientes beneficiarios de los ingresos que produjera la Fundación. De esta forma, los designó fideicomisarios del fideicomiso a crearse pero sin designarlos con ese nombre en su testamento.

Surge de lo anterior, que si concluyéramos, al igual que erróneamente determinó el foro apelativo intermedio, que no existe un error en la redacción de los artículos de incorporación de la Fundación, entonces estaríamos violentando inevitablemente la voluntad del testador y lo resuelto en el primer caso.[25]

Ello así, ya que, inevitablemente, no se podría cumplir la voluntad del testador ya que sus legatarios no podrían a la misma vez ser administradores de la Fundación

---

[25] Debemos señalar que Este Tribunal ha reiterado que "nuestro ordenamiento sucesorio está cimentado en dar cumplimiento a la voluntad del testador en la disposición de sus bienes en lo que no sea contrario a la ley". Moreda v. Rosselli, 150 D.P.R. 473, 480 (2000); Fernández Franco v. Castro Cardoso, 119 D.P.R. 154, 159 (1986); Torres Ginés v. E.L.A., 118 D.P.R. 436, 462 (1987). En reiteradas ocasiones este Tribunal ha expresado que la voluntad del testador "es la ley de la Sucesión" y es la que debe prevalecer a fin de que se produzcan en su día los efectos queridos por el testador dentro del marco permitido por ley. Moreda v. Rosselli, ante, a la pág. 480 (2000), citando a Fernández Franco v. Castro Cardoso, 119 D.P.R. 154 (1986); Calimano Díaz v. Rovira Calimano, 113 D.P.R. 702 (1983); Viuda de Sambolín v. Registrador, 94 D.P.R. 320 (1967).

y recibir un beneficio económico <u>porque los aludidos artículos de incorporación expresamente lo prohíben</u>.

Debemos destacar que fortalece la determinación de que existe un error en los artículos de incorporación de la Fundación el hecho de que, aunque el Museo no es un fideicomiso ni los legatarios demandantes son fideicomisarios del mismo, sus artículos de incorporación, también, contienen las mismas disposiciones con respecto a que una Junta de Fideicomisarios sería la que administraría dicha entidad.

En virtud de lo anterior, con el propósito de dar cumplimiento a la voluntad inequívoca del señor Eduardo Méndez Bagur, <u>concluimos</u> que efectivamente por error u omisión en la redacción del Certificado de Incorporación se utilizó equivocadamente el término incorrecto. Por tal razón, fue correcta la enmienda hecha por los aquí peticionarios al referido Certificado para sustituir cualquier referencia en el mismo a la palabra "fideicomisario" por la palabra "fiduciario" e, igualmente correcta la determinación del foro de instancia a esos efectos.[26]

---

[26] Cabe destacar que el Código Civil establece que el fideicomisario es la persona que se beneficia del fideicomiso. En cambio, el fiduciario es la persona llamada para administrar los bienes fideicomitidos, es la persona de la ejecución del fideicomiso conforme a la voluntad del que la persona que lo creó. Artículo 834 y 862 del Código Civil, 31 L.P.R.A. § 2541 y § 2569.

IV

Los peticionarios señalan, como primer señalamiento de error, que la sentencia del Tribunal Apelativo es contraria a derecho, y en particular a lo resuelto por este Tribunal en el caso Dávila v. Agrait, 116 D.P.R. 549 (1985). Ello en virtud de que, según su interpretación del antes mencionado caso, nuestro ordenamiento jurídico no permite que la figura del fideicomisario[27] se confunda con la del fiduciario. Conforme a lo anterior, aducen que los legatarios demandantes no pueden ser administradores de la Fundación por ser éstos los beneficiarios de la misma.

Por su parte, alegan los mencionados legatarios que, contrario a lo que indican los peticionarios, en el caso Dávila v. Agrait, ante, no se prohibió expresamente que se confundiera la figura del fideicomisario y la del

---

[27] El Artículo 834, 31 L.P.R.A. § 2541, del Código Civil dispone que:

   El fideicomiso es un mandato irrevocable a virtud del cual se trasmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario.

   El fideicomiso con fines no pecuniarios es una relación fiduciaria respecto a bienes, que surge como resultado de la declaración del propósito de crearlo, e impone a la persona en posesión de los bienes deberes en equidad de explotar los mismos para un fin no pecuniario. Dávila v. Agrait, ante a la pág. 560.

fiduciario. Sostienen que en nuestro ordenamiento no se excluye la posibilidad de que pueda existir un fideicomiso en el cual concurra más de un fiduciario que, a su vez, sea fideicomisario, siempre y cuando el número de fideicomisarios sea mayor al número de fiduciarios. Conforme a lo anterior, alegan que en este caso como son varios fideicomisarios, ellos pueden administrar, en vista de que no todos ocuparían cargos en la Junta de Fideicomisarios al mismo tiempo.

Aunque en nuestro ordenamiento no se ha resuelto la posibilidad de que se confundan las figuras de fideicomisario y fiduciario [28], por lo antes expresado resulta innecesario para la disposición de este caso el hacer esta determinación. Ello en virtud de que en este caso el foro primario <u>claramente determinó</u> que había sido la voluntad del testador negarles a los fideicomisarios la capacidad de administrar los bienes de su caudal, y por ende los bienes de la Fundación.

---

[28] En <u>Dávila</u> v. <u>Agrait</u>, ante, a la pág. 559 y 568, respectivamente, se indicó que "<u>La disposición relativa a que el fiduciario pueda también confundirse en el fideicomisario, siempre que el fiduciario no sea único beneficiario, no fue incluida en nuestra ley</u>". Sin embargo, más adelante se indicó que "... las modalidades o variantes de que el fideicomitente pueda constituir el fideicomiso en favor de sí mismo; <u>que un fiduciario pueda ser también beneficiario</u>; o de que el fideicomitente se transforme en fiduciario, no alteran ni la esencia ni la existencia de las tres figuras que entran en el *trust*. Las tres figuras están siempre presentes en la operación. Lo que pasa es que consumada ésta, una de ellas puede desaparecer o dos de ellas pueden concurrir en una misma persona". (citas omitidas).

V

Analizamos por último, y aun cuando el asunto no resulta determinante para el presente caso, el señalamiento de los peticionarios a los efectos de que erró el Tribunal de Apelaciones al permitir que los legatarios demandantes incluyeran en el apéndice del recurso radicado ante dicho foro apelativo evidencia que no fue admitida por el tribunal de instancia.

Como es sabido, en "una sentencia se adjudican las controversias habidas en un pleito y se definen los derechos de las partes involucradas". Falcón v. Maldonado, 138 D.P.R. 983, 989 (1995); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 656 (1987). Una vez se dicta una sentencia, las Reglas de Procedimiento Civil y, en este punto, el Reglamento del Tribunal de Apelaciones rigen lo referente a las formalidades y procedimientos que se deben cumplir para presentar un recurso de apelación.

Específicamente, las Reglas de Procedimiento Civil disponen que un recurso de apelación tiene que ser presentado ante el Tribunal de Apelaciones dentro del término jurisdiccional de treinta (30) días, contado el mismo a partir del archivo en autos de copia de la notificación de la sentencia. Regla 53.1(c) de Procedimiento Civil, 32 L.P.R.A. Ap. III; Regla 13(A) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A. El referido recurso tiene que estar acompañado como --requisito jurisdiccional-- por un

apéndice. Véase: Cruz Castro v. Ortiz Montalvo, 2001 T.S.P.R. 59, res. el 27 de abril de 2002,; Véase, además, Hiram Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, LexisNexis, San Juan, P.R., 2001, págs. 315-316.

Este Tribunal ha señalado que el apéndice es "la recopilación documental (copia literal), de los escritos acumulados durante el trámite en el Tribunal de Primera Instancia, esto es copia sustitutiva de los autos originales[29]". Pellot Ferrer v. Avon Mirabella, Inc., 2003 T.S.P.R. 131, res. el 7 de agosto de 2003; Román et als. v. Román et als., 2002 T.S.P.R. 127, res. el 24 de septiembre de 2002; Codesi, Inc. v. Mun. De Canóvanas, 150 D.P.R. 586, 588-589 (2000). Con respecto a su importancia, reiteradamente hemos expresado, "que mediante el mismo el Tribunal de Circuito oportunamente adjudica la apelación". Pellot Ferrer v. Avon Mirabella, Inc., ante; Codesi, Inc.v. Mun. De Canóvanas, ante. Véase, además, Hiram Sánchez Martínez, op.cit., pág. 314.

Conforme a lo anterior, hemos señalado que la omisión de presentar el apéndice del recurso, o la presentación incompleta del mismo dentro del término de treinta (30)

---

[29] Dicho de otro modo, el apéndice es "la compilación ordenada de las copias legibles de los documentos de que se compone el expediente original del caso ante el tribunal apelado o recurrido o ante la agencia administrativa recurrida." Hiram Sánchez Martínez, ante, a la pág. 313.

días, conlleva la desestimación del recurso. Cruz Castro
v. Ortiz Montalvo, ante; Córdova v. Larín, 151 D.P.R. 192
(2000); Hiram Sánchez Martínez, op.cit., pág. 315.

El Reglamento del Tribunal de Circuito de Apelaciones
enumeraba cuáles son los documentos que deben formar parte
del apéndice.[30] Regla 16(D)(2) del Reglamento del Tribunal
de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, Regla
34(E)(2) del Reglamento del Tribunal de Circuito de
Apelaciones 4 L.P.R.A. Ap. XXII-A y 74(B) del Reglamento
del Tribunal de Circuito de Apelaciones 4 L.P.R.A. Ap.
XXII-A. A esos efectos, además de señalar específicamente
una lista de documentos que deberían incluirse en el
apéndice, disponía que el mismo sólo contendrá copia de
documentos que formen parte del expediente original del
Tribunal de Primera Instancia. Rafael Hernández Colón,
Práctica Jurídica de Puerto Rico, Derecho Procesal Civil,
Michie, San Juan, P.R., 1997, pág. 366. Hiram Sánchez
Martínez, op.cit., pág. 363. Dicho a la inversa, "el
apéndice de un recurso apelativo no deberá contener

---

[30] Vale la pena destacar, que el recurso de *certiorari* que hoy nos ocupa fue presentado el 12 de febrero de 2003; esto es, antes de que entrara en vigor tanto la Ley Núm. 201 de 22 de agosto de 2003, mejor conocida como la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, el Reglamento Transitorio para el Tribunal de Apelaciones, como el Reglamento del Tribunal de Apelaciones. En vista de lo anterior, precisa que limitemos nuestros pronunciamientos a lo dispuesto en la Ley de la Judicatura de 1994, el Reglamento del Tribunal de Circuito de Apelaciones de 1996 y su jurisprudencia interpretativa.

documento alguno que no hubiese formado parte de los autos originales". Hiram Sánchez Martínez, op.cit., pág. 332.

En virtud de las disposiciones estatutarias anteriormente mencionadas este Tribunal ha sido enfático al señalar que "es una práctica indeseable", "que debe descontinuarse", incluir en el apéndice documentos que no estuvieron ante la consideración del foro primario ya que "se coloca al tribunal de instancia en una señalada desventaja." Belmonte v. Mercado Reverón, 95 D.P.R. 257, 263-264 (1967).

No obstante lo anteriormente expuesto, el referido Reglamento proveía un mecanismo mediante el cual las partes pueden elevar al Tribunal de Apelaciones la prueba que fue ofrecida pero no admitida en el foro primario. Las Reglas del Tribunal de Circuito de Apelaciones 16 (D)(2), 34 (E)(2) y 74(c) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A indicaban que la parte apelante o peticionaria tendrá el derecho de elevar, en un apéndice separado[31], copia del legajo de la prueba ofrecida y no admitida cuando el planteamiento ante el

---

[31] "Lo que es necesario entender es que, si no se hace ofrecimiento de prueba ni se solicita que la misma sea marcada como prueba ofrecida y no admitida, la parte no tendrá derecho a preparar el apéndice suplementario a que se refiere la regla 74(C) y el tribunal apelativo no estará obligado a resolver el error planteado al respecto. La realidad es que tal omisión impide que el foro apelativo esté en condición de determinar si la exclusión de esa prueba fue un factor decisivo o sustancial al emitirse el dictamen apelado o recurrido." Hiram Sánchez Martínez, op. cit. a la pág. 343-344.

Tribunal de de Apelaciones se refiera a un error sustancial en la exclusión de la prueba específica de que se trate." Hiram Sánchez Martínez, op.cit., pág. 343; Véase, además, Rafael Hernández Colón, op.cit., pág. 363 n.365.

VI

La parte peticionaria alega que erró el Tribunal de Apelaciones al permitir que la parte demandante sometiera con su apelación evidencia que no era parte de los autos del caso. <u>Le asiste la razón</u>.

Surge de la sentencia emitida por el foro primario el 20 de febrero de 2001 que la parte demandante en este caso ofreció en evidencia durante la vista del caso una serie de documentos. A saber:(1) el testamento del señor Eduardo Méndez Bagur, (2) la sentencia dictada por el juez Wilfredo Alicea López en el pleito Roberto Méndez y otros v. Fundación Eduardo Méndez Bagur Incorporado y otros, civil número KAC93-1225 (803) de la Sala Superior de San Juan con fecha de 31 de agosto de 1994; (3) el certificado de incorporación de la Fundación; (4) las reglas y reglamentos de la Fundación y sus enmiendas; (5) las minutas de la junta de directores de la Fundación;(6) los informes financieros de la Fundación; y (8) el documento en el cual se anuncia la sustitución como director del Lcdo. Paoli.

El foro primario --luego de que la parte demandada admitiera la autenticidad de los mismos-- <u>únicamente</u> admitió en evidencia el testamento, la sentencia, los artículo de incorporación y las minutas de la junta de fiduciarios del 1ro y 18 de abril de 1995.

Aunque la parte demandante presentó un testigo para autenticar el informe financiero, el foro primario --luego de la objeción de la parte demandada-- lo marcó como prueba ofrecida pero no admitida. La otra prueba documental no fue admitida debido a que la parte demandante no presentó prueba testifical para autenticar los mimos.

De la lectura del apéndice presentado por la parte demandante ante el foro apelativo intermedio surge claramente que la parte demandante incluyó en su apéndice una serie de documentos que no fueron admitidos como evidencia por el foro primario. A esos efectos, añadieron las minutas de la junta de fiduciarios de la Fundación del 1 de diciembre de 1992 y del 5 de enero de 1995, los estados financieros de los años 1992 al 2000, cartas dirigidas al albacea, a los directores u oficiales, y a los abogados de ambas fundaciones, y un documento en el cual se anunciaba la sustitución como director del Lcdo. Paoli.

Resulta claro que la parte demandante incluyó incorrectamente en su apéndice documentación que fue ofrecida pero no admitida por el foro primario.

Ciertamente, como mencionamos anteriormente, es práctica indeseable el incluir documentos en el apéndice del recurso de apelación que no estuvieron ante la consideración del foro primario. No hay duda de que las reglas son claras al señalar que el apéndice sólo contendrá copia de aquellos documentos que formaron parte del expediente y que en caso de que la parte considere que dicho foro cometió error al dejar fuera una evidencia presentada pero no admitida, tal error ha de ser planteado ante el foro apelativo y la prueba no admitida se incluirá en un apéndice separado. Más aún, hemos señalado que las reglas concernientes a los recursos a presentarse ante los tribunales apelativos "deben observarse rigurosamente" y no puede quedar "al arbitrio de los abogados decidir qué disposiciones reglamentarias deben acatarse y cuándo...". Arriaga v. F.S.E., 145 D.P.R. 122, 129-130 (1998) citando a Matos v. Metropolitan Marble Corp., 104 D.P.R. 122 (1975).

Surge de lo anterior que incidió el foro apelativo al admitir que la parte demandante adjuntara a su apéndice evidencia que no fue considerada por el foro primario. No obstante, concluimos que aunque fue cometido el referido señalamiento de error, como una lectura de la sentencia del Tribunal de Apelaciones no se puede decir con certeza si dicho foro tomó, o no, en consideración la referida prueba para la determinación del caso, el error cometido no tiene mayor importancia.

VII

En méritos de lo antes expuesto, procede revocar el dictamen emitido por el Tribunal de Apelaciones y confirmar la determinación del foro primario.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Roberto Méndez, Bárbara
Méndez, et als.

    Peticionarios

       vs.                CC-2003-91      CERTIORARI

Fundación Esposos Luis Méndez
Vaz y María Bagur, Inc. et
als.

    Recurridos

SENTENCIA

San Juan, Puerto Rico 11 de julio de 2005

       Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria del dictamen emitido por el Tribunal de Apelaciones y se confirma la determinación del tribunal de instancia.

       Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Fuster Berlingeri y señor Rivera Pérez concurren en el resultado sin opinión escrita.

                   Aida Ileana Oquendo Graulau
                   Secretaria del Tribunal Supremo