ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| | | |
|---|---|---|
| MANUEL SANTANA DOMÍNGUEZ, SONNY M. ARROYO PEDRO<br><br>APELANTES<br><br>V.<br><br>DESARROLLADORES DEL CARIBE, S.E., CIDRA EXCAVATION, S.E., ASOCIACIÓN DE EMPLEADOS DEL ELA (AEELA), BANCO POPULAR<br><br>APELADOS | KLAN202400655 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.:<br>CA2022CV01923<br><br>Sobre:<br>Solicitud para hacer cumplir orden |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Rivera Torres, la Jueza Rivera Pérez y el Juez Campos Pérez

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de agosto de 2024.

Comparece ante nosotros Manuel Santana Domínguez (Santa Domínguez) y Sonny M. Arroyo Pedró (Arroyo Pedró) (en conjunto apelante) mediante el presente recurso de apelación y nos solicita que revoquemos la *Sentencia* emitida el 10 de junio de 2024, notificada el mismo día, por el Tribunal de Primera Instancia, Sala Superior de Carolina (TPI). Mediante esta, el TPI desestimó con perjuicio la causa de acción contra la Asociación de Empleados del ELA (AEELA) y el Banco Popular de Puerto Rico (BPPR) (en conjunto apelada).

Adelantamos que, por los fundamentos que exponemos a continuación, confirmamos el dictamen apelado

**I**

El 15 de junio de 2023, la apelante presentó una *Petición para Hacer Cumplir Orden Emitida por DACO.*[1] Adujeron que el Departamento de

---
[1] Apéndice del recurso, págs. 1-56.

Asuntos del Consumidor (DACO), dictó el 30 de julio de 2013, una *Resolución Final* en contra de la AEELA y de Desarrolladores del Caribe, S.E. (Desarrolladores). Señalaron que, mediante dicha *Resolución*, DACO resolvió un contrato de préstamo hipotecario, suscrito entre AEELA y la apelante; igualmente, arguyó que el DACO resolvió el contrato de compraventa suscrito por Desarrolladores y la apelante. También, mencionó en su petición que: en algún momento durante el proceso ante DACO, AEELA vendió su crédito hipotecario al BPPR, quien advino sucesor en derecho de AEELA; que ni AEELA ni BPPR le notificaron a la apelante, ni al DACO, sobre la venta del crédito hipotecario.

Asimismo, en su petición, la apelante adujo que Desarrolladores solicitó revisión administrativa de la referida *Resolución* del DACO ante el Tribunal de Apelaciones; que durante el proceso apelativo, Desarrolladores solicitó quiebra, por lo cual, este Tribunal ordenó la paralización de la revisión administrativa; que el **3 diciembre de 2021**, este Tribunal de Apelaciones, en el caso KLRA201300859, declaró no ha lugar la revisión judicial de la *Resolución* del DACO presentada por Desarrolladores; que dicha *Resolución* de DACO advino final, firme e inapelable, incluyendo a AEELA, quien no solicitó revisión administrativa de la misma; que igualmente, dicha *Resolución* advino final y firme contra el BPPR, sucesor en derecho de AEELA; que previo a la *Resolución* del 3 de diciembre de 2021, este Tribunal emitió una *Sentencia* el **10 de marzo de 2020** en el caso KLAN202000098, en la cual revocamos la *Sentencia* del Tribunal de Primera Instancia debido a que el foro primario carecía de jurisdicción para hacer cumplir la *Resolución* del DACO, toda vez que la misma no era final ni firme, puesto que todavía era objeto de un procedimiento de *Revisión Administrativa* ante el Tribunal de Apelaciones en el caso KLRA201300859. Por el mismo fundamento, tampoco tenía jurisdicción para considerar los méritos de la referida *Resolución* administrativa.

Así pues, la apelante le solicitó al TPI que le ordenara a BPPR que cumpliera con la *Resolución* emitida por el DACO, es decir, que cancelara

la hipoteca que gravaba la propiedad de la apelante, ya que la *Resolución* del DACO era final, firme e inapelable. Además, solicitaron la imposición de costas y honorarios de abogado. Anejó a su petición la *Resolución* del DACO y los casos de este Tribunal de Apelaciones KLRA201300859 y KLAN202000098.

Por su parte, el 26 de octubre de 2022, AEELA presentó una *Moción en Cumplimiento de Orden y en Solicitud de Desestimación.*[2] Mediante esta, le solicitó al TPI que desestimara con perjuicio la petición de la apelante toda vez que desde el 2012, AEELA no era el dueño del préstamo hipotecario, por lo que no tenía ninguna autoridad para cumplir con el remedio solicitado.

Luego de la concesión de prórroga, el 19 de diciembre de 2022, BPPR presentó una *Moción para que se Desestime con Perjuicio la "Petición para Hacer Cumplir Orden Emitida por Daco" al Amparo de la Doctrina de Cosa Juzgada y su Modalidad de Impedimento Colateral.*[3] A través de esta, BPPR mencionó que previo a la *Resolución* emitida por DACO, la apelante tenía conocimiento sobre la venta del préstamo hipotecario entre AEELA y el BPPR. Además, expresaron que los mismos argumentos y asuntos que pretendían litigar contra BPPR en el caso de epígrafe, ya habían sido litigados y adjudicados en contra de la apelante mediante una *Resolución* y *Sentencia* que advinieron finales y firmes, por lo que en el caso de autos era de aplicación la doctrina de cosa juzgada.

En específico, BPPR argumentó en su moción que había sometido una *Demanda* sobre cobro de dinero y ejecución de hipoteca en el caso Civil Núm. FBCI2015-1922. Asimismo, señaló que en dicho caso alegaron que la *Resolución* del contrato del préstamo hipotecario ordenada por el DACO estaba sujeta a una condición suspensiva que nunca se materializó y que la apelante había incumplido con su obligación de pagar la deuda hipotecaria. Así pues, el foro primario, en el caso Civil Núm. FBCI2015-

---

[2] Apéndice del recurso, págs. 63-67.
[3] Apéndice del recurso, págs. 80-319.

1922, emitió una *Resolución* donde declaró No Ha Lugar una moción de sentencia sumaria presentada por la apelante, quien cuestionó, entre otras cosas, la jurisdicción del tribunal para adjudicar la controversia.[4] En esa ocasión, el TPI resolvió que tenía jurisdicción para adjudicar la controversia toda vez que la resolución del contrato de préstamo hipotecario ordenado por DACO estaba sujeta a una condición suspensiva que nunca se concretó, por lo que el contrato estaba vigente y la apelante venía obligada a cumplir con el mismo. De este modo, BPPR sostuvo que la *Resolución* del **6 de febrero de 2020,** en el caso Civil Núm. FBCI2015-1922, advino final y firme el **15 de julio de 2020** puesto que no se había acudido oportunamente ante este Tribunal de Apelaciones para su revisión.

Asimismo, BPPR señaló en su moción desestimatoria que el **23 de septiembre de 2020**, el TPI dictó una *Sentencia* en el caso FBCI2015-1922 en donde declaró Ha Lugar una moción de sentencia sumaria presentada por BPPR y, en consecuencia, declaró Ha Lugar la *Demanda* en cobro de dinero y ejecución de hipoteca presentada en ese caso por el banco.[5] El TPI determinó que no había controversia en cuanto a que el BPPR era el tenedor del pagaré hipotecario suscrito por AEELA con la apelante; que la apelante incumplió con su obligación de pagar dicho préstamo hipotecario; que debido al incumplimiento, BPPR declaró la totalidad de la deuda vencida a tenor con los dispuesto en la Escritura de Hipoteca; y, que la apelante le adeudaba a BPPR.

Igualmente, el BPPR expresó en su moción de desestimación que la apelante acudió ante esta Curia para que revisáramos la *Sentencia* del caso FBCI2015-1922. Ante esto, el **9 de noviembre de 2021**, dictamos una *Sentencia* en el caso KLAN202100040 en donde confirmamos la determinación del TPI en el caso FBCI2015-1922.[6] En nuestra *Sentencia* del caso KLAN202100040 atendimos los siguientes señalamientos de error presentados por la parte apelante:

---

[4] Apéndice del recurso, págs. 150-156.
[5] Apéndice del recurso, págs. 178-192.
[6] Apéndice del recurso, págs. 265-280.

Erró el TPI al emitir una Resolución declarando no ha lugar la sentencia sumaria de la parte demandada y, a su vez**,** asumir jurisdicción para considerar los méritos de la Resolución de DACO, tanto en la revisión de los hechos como en el análisis interpretativo de los remedios, cuando esa jurisdicción está reservada, por ley, para el TA, anulando dicha Resolución administrativa por dos fundamentos: i) porque otra sala del mismo Tribunal resolvió que "la **Resolución emitida por el Departamento de Asuntos del Consumidor, el 30 de julio de 2013 es un dictamen "nulo y no puede tener efecto alguno sobre el banco popular por se[r] éste una parte indispensable que nunca fue incluida en ese procedimiento"** (Ap. 172 final, 173 principios) y ii) porque las determinación(*sic*) de hechos de la Resolución administrativa estaban en controversia, "existen controversias sobre los hechos **2 al 23** que…**surgen de una resolución que es nula,"**; (Ap.172, final). Y luego de revisar totalmente la Resolución de DACO, sin jurisdicción para ello, resolvió que **"este Tribunal tiene jurisdicción** [para atender la ejecución de hipoteca que nos ocupa]". (Ap. 176, final) El error llegó a límites inimaginables, cuando el propio BPPR le notificó la sentencia del TA en el otro caso, la cual a su vez, era, *subsilentio*, revocatoria de su Resolución, y el TPI, aun con ese conocimiento, optó por ignorar el devastador efecto jurídico que la Sentencia del TA tenía en su decisión, y no se manifestó ni se expresó sobre ello, pero mantuvo silencio total en la sentencia declarando con lugar la ejecución de hipoteca, constituyendo ese silencio, una segunda revocación, aunque silente, de la Resolución del DACO.

Erró el TPI al declarar con lugar la demanda, cuando hay evidencia abundante en el expediente judicial, el cual el **TPI afirma haber examinado**, estableciendo que existe una Resolución de un foro administrativo, DACO, que decretó la resolución del contrato de préstamo y, por ende el de hipoteca, razón por la cual, el TPI no tenía jurisdicción para considerar la demanda sobre cobro del préstamo que un foro administrativo resolvió, y cuando dicha Resolución no ha sido revocada.(Énfasis y subrayado en el original.)

De este modo, surge de nuestra *Sentencia* del caso KLAN202100040 -citada por BPPR en su moción – que resolvimos que carecíamos de jurisdicción para atender el primer error debido a que se trataba de la *Resolución* emitida el 6 de febrero de 2020; esto debido a que se acudió fuera de término para su revisión. De otra parte, en cuanto al segundo error presentado en el caso KLAN202100040, resolvimos que el TPI tenía jurisdicción para emitir la *Sentencia* apelada del 23 de septiembre de 2020 en el caso FBCI2015-1922. En esencia, señalamos que la resolución del contrato préstamo estaba sujeta a una condición suspensiva que nunca se cumplió, por lo que el préstamo hipotecario continuaba vigente. Además, la apelante recurrió de nuestra determinación ante

nuestro Tribunal Supremo. No obstante, el alto foro emitió una *Resolución* el **4 de marzo de 2022** en donde decidió no expedir el *certiorari*.[7]

Por otro lado, este Tribunal tomó conocimiento judicial sobre una *Resolución* que emitimos el 11 de septiembre de 2023 en donde denegamos un recurso de *certiorari* interpuesto por la apelante, toda vez que había acudido ante nosotros, con el propósito de "**trata[r] de dejar sin efecto una Sentencia Sumaria dictada el 23 de septiembre de 2020**, **la cual se tornó final y firme, luego de ser confirmada por este foro intermedio y denegada la expedición por el Tribunal Supremo de P.R.**".[8] (Énfasis nuestro.) En esa ocasión señalamos lo siguiente:

> A todas luces, los peticionarios pretenden utilizar como subterfugio el presente recurso de *certiorari* para re-litigar la referida Sentencia Sumaria final y firme dictada el 23 de septiembre de 2020. Ciertamente, en el presente caso la moción de los peticionarios "ante nuevos acontecimientos jurídicos", resulta parecida a un relevo de sentencia que no cumple con ninguno de sus requisitos**. Las argumentaciones que se esgrimen ante nos, son idénticas a las resueltas y adjudicas en la Sentencia del 9 de noviembre de 2021 —KLAN202100040— por un Panel hermano**.[9] (Énfasis nuestro.)

El 24 de enero de 2023, la apelante presentó en el caso de epígrafe una *Réplica a Mociones de Desestimación Sometidas por AEELA y BPPR*.[10] Mediante esta, mencionaron que el caso ante la consideración del TPI versaba sobre la ejecución de los remedios dispuestos en la *Resolución* emitida por el DACO el 30 de julio de 2013, la cual era final, firme e inapelable. Además, añadieron que la *Sentencia* del TPI emitida el 23 de septiembre de 2020 en el caso FBCI2015-1922, y confirmada por este Tribunal de Apelaciones el 9 de noviembre de 2021 en el caso KLAN202100040, era nula debido a que esta alegadamente revocó sin jurisdicción la *Resolución* del DACO. Por tanto, señalaron que no podía configurarse la doctrina de cosa juzgada en el caso de autos.

---

[7] Apéndice del recurso, pág. 319.
[8] Véase, KLAN202300393. *Demanda* sobre cobro de dinero y ejecución de hipoteca, caso Civil Núm. FBCI2015-1922.
[9] *Id.*
[10] Apéndice del recurso, págs. 324-334.

Luego de varios trámites procesales, el TPI dictó *Sentencia* el 10 de junio de 2024, la cual fue notificada el mismo día.[11] Mediante esta, el TPI declaró Ha Lugar la *Moción para que se Desestime con Perjuicio la "Petición para Hacer Cumplir Orden Emitida por Daco" al Amparo de la Doctrina de Cosa Juzgada y su Modalidad de Impedimento Colateral* presentada por BPPR por ser cosa juzgada. Asimismo, declaró Ha Lugar la *Moción en Cumplimiento de Orden y en Solicitud de Desestimación* presentada por AEELA. De este modo, el foro primario desestimó el pleito con perjuicio contra la AEELA y el BPPR. Además, toda vez que la apelante tenía pleno conocimiento sobre la sentencia en el caso FBC12015-1922, el TPI ordenó el pago de costas, gastos y honorarios de abogado por temeridad en la cantidad de $500.00 para BPPR y $ 500.00 para AEELA.

Inconforme con lo resuelto por el foro primario, el 9 de julio de 2024 la apelante presentó una *Apelación* ante este Tribunal de Apelaciones y nos señaló la comisión de los siguientes errores:

> **Primer Error:** Erró el Tribunal al aplicar la doctrina de cosa juzgada e impedimento colateral por sentencia, clasificando un caso del 2015 (FBCI2015-1922) como el caso anterior ("litigio o pleito anterior") y a la *Resolución* de DACO, que es del 30 de julio de 2013, como el caso posterior ("nuevo pleito"). Este error se magnifica, por tres errores inherentes e inseparables al ya señalado: i) cuando el TPI considera que una solicitud de hacer cumplir, equivale a un caso nuevo, y al así clasificarlo, ignorar que la fecha a considerar es la de la *Resolución* que dispone los remedios, cuya ejecución se solicita y no la fecha en que se somete la solicitud de hacer cumplir los remedios; ii) al convertir el proceso de ejecución en un nuevo juicio, cuando ignora totalmente lo resuelto por DACO y los remedios provistos a favor del consumidor; iii) cuando el TPI concluye que una "Resolución emitida el 6 [de] febrero [de] 2020, en el caso FCBI2015-1922, determinó que la Resolución de DACO estaba sujeta a una condición suspensiva que no se cumplió por lo cual en (sic) contrato en cuestión [de préstamo] continuaba vigente" y que, "La **resolución de DACO fue adjudicada en el caso FBCI2015-**1922[,] por lo cual[,] **no procede ponerla en efecto. *[…]*"**

> **Segundo Error:** Erró el TPI al concluir que los Apelantes "teniendo pleno conocimiento sobre **la sentencia en el caso anterior FBCI2015-1922, prestaron un nuevo pleito en contra de los demandados y sus abogados**, incurriendo en gastos y trabajo[s] innecesarios, prolongando el caso que tenemos actualmente ante nuestra consideración y tratando

---

[11] Apéndice del recurso, págs. 414-422.

de re-litigar asunto que ya fue resuelto'; luego imponerle honorarios, y gastos.

El TPI no tiene autoridad para convertir una solicitud de ejecución de una orden administrativa del DACO, que es final, firme e inapelable, en un proceso adversativo, donde la parte perdidosa ante la agencia litiga lo que renunció al no solicitar reconsideración o revisión judicial, transformando ilegalmente el proceso de ejecución en uno de revisión judicial. Y ese error queda resaltado cuando el TPI admite sobre 220 documentos, generados por BPPR, en un proceso ajeno, independiente y absolutamente desvinculado del proceso exclusivo y jurisdiccional que disponen la Ley #5 del DACO y la LPAU. Y luego el TPI cita dichos documentos, como autoridad jurídica para denegar la ejecución de una Resolución administrativa que es final, firme e inapelable, emitida por DACO, dentro del proceso exclusivo para querellas de consumidores. Proceso exclusivo que dimana de una ley especial, como lo es la Ley #5, supra, pero el TPI opta por citar una ley general como lo es el Código Civil.

El 8 de agosto de 2024, BPPR presentó un *Alegato en Oposición a "Apelación"*. Ese mismo día, AEELA presentó su *Alegato en Oposición a Recurso de Apelación*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II**

**A.**

La doctrina de cosa juzgada o *res judicata* "tiene el propósito de dar la debida dignidad a las actuaciones de ellos tribunales." *Méndez v. Fundación*, 165 DPR 253, 267 (2005). Dicha doctrina responde al interés del Estado en que se les ponga fin a los litigios y evitar que se someta en múltiples ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Id*; que cita a *Pagán Hernández v. U.P.R.*, 107 DPR 720, 732 (1978) y *Worldwide Food Dis., Inc. v. Colón et al.*, 133 DPR 827, 833-834 (1993). Así las cosas, la doctrina de cosa juzgada es de aplicación cuando existe entre una sentencia y una causa invocada "la más perfecta identidad entre las cosas, las causas, los litigantes y la calidad en que lo fueron". R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2017, sec. 103; pág. 3.

Por tanto, al determinar si procede la defensa de cosa juzgada, debemos examinar "si los hechos y fundamentos de las peticiones son los

mismos en lo que afecta a la cuestión planteada". *Beníquez et al. v. Vargas et al*,184 DPR 210, 223 (2012) que cita a *Worldwide Food Dis., Inc. v. Colón, supra*, pág. 835 y *A & P Gen. Contractors v. Asoc. Can*á, 110 DPR 753, 765 (1981).

De otra parte, en nuestro ordenamiento jurídico se reconoce la figura del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. *P. R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139, 152 (2008); *Méndez v. Fundación, supra*, pág. 268. El impedimento colateral por sentencia "surte efectos cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y se determina mediante sentencia válida y final" y "tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción distintas." *A & P Gen. Contractors v. Asoc. Caná, supra*, pág. 762.

Es decir, el impedimento colateral por sentencia impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior. *P. R. Wire Prod. v. C. Crespo & Asoc., supra*, pág. 153. A su vez, la doctrina de impedimento colateral por sentencia se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda, "[e]sto es, que la razón de pedir, plasmada en la demanda, sea la misma en ambos litigios." *Id.*, pág. 152, que cita a *Rodríguez Rodríguez v. Colberg Comas,* 131 DPR 212, 221 (1992) y *A & P Gen. Contractors v. Aso. Caná, supra*, pág. 765.

El impedimento colateral por sentencia se manifiesta en dos modalidades, la defensiva y la ofensiva. *P. R. Wire Prod. v. C. Crespo & Asoc., supra*, que cita a *A & P Gen. Contractors v. Aso. Caná, supra*, págs. 758-761. La modalidad defensiva le permite al demandado levantar la defensa de impedimento colateral por sentencia, a los fines de impedir la litigación de un asunto levantado y perdido por el demandante en un pleito anterior frente a otra parte*. P. R. Wire Prod. v. C. Crespo & Asoc., supra*. De otro lado, la modalidad ofensiva es articulada por el

demandante en un litigio posterior para impedir que el demandado relitigue los asuntos ya dilucidados y perdidos frente a otra parte. *Id.*

Como se puede apreciar, el denominador común entre ambas modalidades es que la parte afectada por la interposición del impedimento colateral ha litigado y ha perdido el asunto en el pleito anterior. *Id.* Por lo tanto, "no procede la interposición de la doctrina de impedimento colateral por sentencia -ya sea en su vertiente ofensiva o defensiva- cuando la parte contra la cual se interpone no ha tenido la oportunidad de litigar previamente el asunto y no ha resultado ser la parte perdidosa en un litigio anterior." *Id.*

**B.**

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. III, R. 44.1, permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. En su parte pertinente, el inciso (d) de la mencionada norma establece lo siguiente: "En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta." 32 LPRA Ap. V, R. 44.1 (d).

Se considera temeridad "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables." *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Cabe señalar que esta misma conducta se toma en cuenta tanto para la imposición de honorarios de abogado al amparo de la Regla 44.1 (d) de Procedimiento Civil, *supra*, como para la imposición del interés legal por temeridad al amparo de la Regla 44.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3 (b). Según lo ha expresado el Tribunal Supremo, ambas penalidades "persiguen el mismo propósito de disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos

y las molestias producto de la temeridad de la otra parte." *Marrero Rosado v. Marrero Rosado*, *supra*, pág. 505.

El propósito de la imposición de honorarios por temeridad es penalizar a la parte perdidosa "que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 702 (1999). Se considera que incurre en temeridad aquella parte que torna necesario un pleito frívolo y obliga a la otra a incurrir en gastos innecesarios. *P.R. Oil v. Dayco*, 164 DPR 486, 511 (2005). La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador. *Id.* La imposición del pago de honorarios de abogado es imperativa cuando el tribunal sentenciador concluye que una parte incurrió en temeridad. *Id.* Además, debemos señalar que la norma es que "[e]n ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada." *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 39-40, (1962). Es decir, no es necesaria una determinación expresa de temeridad si el foro sentenciador impuso el pago de una suma por honorarios de abogado en su sentencia. Por constituir un asunto discrecional del tribunal sentenciador, los tribunales revisores solo intervendremos en dicha determinación cuando surja que un claro abuso de discreción. *P.R. Oil v. Dayco*, *supra*, pág. 511.

Sin embargo, es importante aclarar que se entiende que no existe temeridad cuando lo que se plantea ante el foro primario son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. De igual manera, no existe temeridad en aquellos casos en que el litigante actúa de acuerdo con la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión. Tampoco se incurre en temeridad cuando existe alguna

desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006).

**III**

En su recurso apelativo, la apelante presentó dos señalamientos de error. En primer lugar, la apelante adujo que incidió el TPI al aplicar la doctrina de cosa juzgada e impedimento colateral por sentencia en el caso de autos. Asimismo, señalan como segundo error que el TPI erró al concluir que la apelante tenía conocimiento sobre la *Sentencia* del caso FBCI2015-1922 y presentaron el pleito contra el BPPR y la AEELA, por lo que se incurrió en gastos y trabajos incensarios y en la prolongación del caso de epígrafe.

Como reseñamos previamente, para que aplique la doctrina de cosa juzgada, deben coincidir los siguientes elementos: (1) una primera sentencia válida, la cual advino final y firme que adjudicó los hechos y resolvió la controversia en los méritos; (2) las partes en ambos juicios deben ser las mismas; (3) era la misma controversia objeto en cada juicio; (4) que el remedio que se solicita sea análogo al que se pidió en el caso anterior; y, por último, (5) que las partes en ambos litigios comparezcan en la misma calidad. *Beníquez et al. v. Vargas et al.*, *supra*. En resumen, la doctrina de cosa juzgada requiere que entre el caso resuelto mediante sentencia y en el caso en que se invoca concurra la más perfecta identidad entre las cosas, causas, personas litigantes y la calidad en que lo fueron. *Id.* Además, dicha doctrina responde al interés del Estado en que se les ponga fin a los litigios y evitar que se someta en múltiples ocasiones a un ciudadano a las molestias que supone litigar la misma causa. *Méndez v. Fundación*, *supra*. A su vez, el impedimento colateral por sentencia-la cual es una modalidad de la doctrina de cosa juzgada- **impide que se litigue en un litigio posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior**. *P. R. Wire Prod. v. C. Crespo & Asoc.*, *supra*.

Surge del caso ante nuestra consideración que la apelante acude ante esta Curia con el propósito de re litigar la *Resolución* del TPI del 6 de febrero de 2020 y la *Sentencia* del TPI del 23 de septiembre de 2020 que fueron confirmadas por este Tribunal de Apelaciones el 9 de noviembre de 2021 en el caso KLAN202100040. El Tribunal Supremo denegó la expedición de *certiorari* mediante *Resolución* del 4 de marzo de 2022 para revisar dicha *Sentencia*, por lo cual advino final y firme. Asimismo, como si fuera poco, el 11 de septiembre de 2023 emitimos una *Resolución* en el caso KLAN202300393 en donde denegamos expedir un recurso de *certiorari*, pues la parte apelante intentó re litigar la *Sentencia* del 23 de septiembre de 2020.

En nuestra *Resolución* del 9 de noviembre de 2021, en donde confirmamos la *Sentencia* del 23 de septiembre de 2020, expresamos lo siguiente:

> La controversia ante nos es una reclamación de cobro de dinero por el incumplimiento de las obligaciones pactadas y quedó establecido que el TPI aplicó correctamente el derecho. Es un hecho incontrovertido que los apelantes incumplieron con el pago de las mensualidades vencidas de la Primera Hipoteca desde el 1 de marzo de 2015 hasta el presente y, que las cantidades reclamadas en la demanda son líquidas y exigibles.
>
> A su vez, mediante el recurso ante nos, **los Apelantes aducen que el TPI no tenía jurisdicción para evaluar la demanda de cobro de dinero debido a que el DACO había emitido un dictamen en el cual decretó la resolución de dicho contrato de préstamo. En lo atinente, el DACO ordenó a los desarrolladores de la propiedad a liquidar el balance del mencionado préstamo. Sin embargo, sostuvo que la resolución del contrato de préstamo no sería en perjuicio del acreedor y enfatizó que "el acreedor continúa con la garantía del gravamen hipotecario, pues la resolución del contrato de préstamo que estamos ordenando tiene efecto sólo después de la liquidación del préstamo". Evidentemente, estamos frente a una obligación condicional. Esto debido a que surge claramente del dictamen antes citado que la resolución del contrato de préstamos estaba sujeto a una condición suspensiva que no se cumplió por causas ajenas a las partes. En síntesis, en el presente caso los desarrolladores no liquidaron el préstamo hipotecario por lo que dicho préstamo continúa vigente.**
>
> Por tanto, **el TPI tenía jurisdicción para emitir su sentencia** ordenando a los Apelantes a pagarle al Banco Popular la

suma adeudada y la ejecución de la hipoteca. (Énfasis nuestro.)

Al comparar los errores presentados por la parte apelante en el caso de epígrafe y la discusión de los mismos con los casos previamente discutidos, notamos que esta pretende re litigar controversias que ya fueron adjudicadas por el TPI y por este Tribunal de Apelaciones. Asimismo, estas advinieron finales y firmes y nuestro Tribunal Supremo decidió no revisar las mismas. Así pues, la parte apelante ha actuado temerariamente al instar un pleito que se pudo evitar, lo cual a obligó que AEELA y BPPR incurrieran en gestiones evitables. *Marrero Rosado v. Marrero Rosado*, *supra*.

En conclusión, resolvemos que actuó correctamente el TPI al desestimar con perjuicio la causa de acción contra la AEELA y el BPPR por ser cosa juzgada. Además, el segundo error no se cometió toda vez que la apelante tenía conocimiento sobre la *Resolución* y la *Sentencia* en el caso FBC12015-1922, por lo que procede el pago de costas, gastos y honorarios de abogado por temeridad.

**IV**

Por los fundamentos que anteceden, confirmamos la *Sentencia* apelada.

**Notifíquese.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones