Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| COOPERATIVA DE AHORRO Y CRÉDITO DE EMPLEADOS DE PEPSI COLA<br><br>Apelante<br><br>v.<br><br>COOPERATIVA DE SEGUROS MÚLTIPLES DE PUERTO RICO<br><br>Apelada | KLAN202500094 | Apelación Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.: SJ2021CV04629<br><br>Sobre: Seguros |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2025.

El 6 de febrero de 2025, la Cooperativa de Ahorro y Crédito de los Empleados de Pepsi Cola (en adelante, Cooperativa Pepsi Cola o la apelante) acudió ante este Tribunal de Apelaciones mediante un recurso de *Apelación*. En esta, nos solicitó que revoquemos la *Sentencia* emitida y notificada el 10 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario).

Por virtud del aludido dictamen, el foro primario concluyó que los límites de responsabilidad anuales bajo una fianza general de fidelidad no eran acumulativos. En consecuencia, determinó que el límite máximo de responsabilidad de la Cooperativa de Seguros Múltiples de Puerto Rico (en adelante, Seguros Múltiples o la apelada) por pérdidas reclamadas por la apelante bajo dicha fianza era de $302,000.00.

Estudiado el legajo apelativo, conforme al derecho más adelante consignado, resolvemos **modificar** la sentencia apelada.

Número Identificador

SEN2025 _____

**-I-**

El 22 de julio de 2021, la Cooperativa Pepsi Cola presentó una *Demanda* en contra de Seguros Múltiples sobre reclamación bajo fianza general de fidelidad. En esta, alegó que para cada uno de los años desde el 2000 hasta el 2018, Seguros Múltiples había emitido a favor de la apelante una "Fianza General de Fidelidad para Cooperativas de Ahorro y Crédito". Específicamente, señaló que la fianza contenía múltiples coberturas entre las que se encontraban las siguientes:

> "2.1 A – Fidelidad: Por pérdida directa de cualquier PROPIEDAD, o por daño a la misma, como resultado de actos fraudulentos o falta de honestidad de cualquier EMPLEADO o DIRECTOR del ASEGURADO, que sea elegible como el principal bajo esta cobertura, cometidos dichos actos en cualquier sitio, por el EMPLEADO o DIRECTOR solo o en acuerdo o conspiración con otras personas."

> "2.7 G – Gastos de Intervenciones: Sujeto a las disposiciones especiales contenidas en la Sección 3.3, esta fianza pagará por gastos necesarios y razonables incurridos y pagados por el ASEGURADO, por concepto de intervenciones y exámenes de los libros y récords del ASEGURADO, requeridos para la preparación de evidencia relacionada con pérdidas o daños que constituyan una reclamación válida y pagadera bajo la Sección 2.1 (Cobertura A), y la Sección 2.10, Cobertura J."

La apelante relató que, para el mes de febrero de 2018, la Corporación Pública para Supervisión de Cooperativas de Puerto Rico (en adelante, COSSEC) realizó una inspección de contabilidad, documentos y sistemas de la Cooperativa Pepsi Cola. Añadió que durante la investigación se detectó una serie de aparentes irregularidades y, en consecuencia, se encomendó una investigación contable de carácter forense a la firma Zayas, Morazzani & Co.. Según la Cooperativa Pepsi Cola, la firma contratada rindió un *Informe de Estimados de Pérdidas Bajo las Coberturas 2.1-A de Fidelidad, 2.7-G Gastos de Intervenciones, 2.10-J Negligencia en el Cumplimiento del Deber.* En este, se determinó pérdidas ocurridas entre los años 2011 al 2018 por la suma de $6,496,363.00.[1] Por otra parte, indicó que el informe

---

[1] También informó que, para los años cubiertos en el informe, la Sra. Sonia Martínez (en adelante, "señora Martínez") fungió como su PRESIDENTA/Administradora; que en el desempeño de sus funciones esta incurrió en un esquema de actos deshonestos o fraudulentos mediante la alteración y falsificación de documentos, falsificación de firmas

identificó fondos recibidos de clientes durante los años 2000 al 2010, pero que no pudieron identificar si se utilizaron en beneficio de la Cooperativa Pepsi Cola y que ascendían a $3,200,000.00. Así pues, y basándose en el informe preparado y el monto de la fianza vigente para cada año, la apelante presentó una reclamación a Seguros Múltiples bajo las coberturas arriba transcritas.

La Cooperativa Pepsi Cola indicó que el 22 de abril de 2021, Seguros Múltiples resolvió la reclamación sometida. Alegó que, en la misiva emitida, la apelada determinó que las acciones de la señora Martínez activaron la cobertura de la fianza 2.1A y aceptó la pérdida de $6,496,363.00 del informe. No obstante, luego de hacer los ajustes por deducible y coaseguro, resolvió que el total a pagar por la reclamación era $300,000.00, ya que era el límite de la cubierta de la Sec. 2.1 A. Al respecto, al citar el caso Universal Ins. v. Popular Auto, 207 DPR 228 (2021), la apelante arguyó que la cobertura de la Sec. 2.1 A debería aplicar por separado para cada uno de los años en que se sufrió una pérdida. Por esta razón, solicitó al foro primario que le ordenara a Seguros Múltiples a pagarle las pérdidas sufridas durante los años 2011 a 2018 cubiertas por la cobertura de la Sec. 2.1 A, para una suma de $2,300,975.00. A su vez, reclamó pago por las pérdidas sufridas durante los años 2000 a 2010 cubiertas por la Sec. 2.1 A, así como, las pérdidas sufridas durante los años 2008-2017, cubiertas por la Sec. 2.10 J para una suma de 2,856,000.00; gastos de intervención e investigación correspondiente a la cobertura de la Sec. 2.7 G por una de $38,000.00; y costas, gastos y honorarios de abogado.

El 16 de febrero de 2023, Seguros Múltiples contestó la *Demanda*. Al así hacer, admitió haber expedido una fianza a favor de la Cooperativa Pepsi Cola que estuvo vigente durante los años 2000 al 2018. Igualmente,

---

de socios, retiro de fondos en cuentas de socios sin autorización, entre otros actos; y que por tales hechos, contra esta se llevó a cabo un proceso judicial de naturaleza criminal en el que el 28 de enero de 2021 hizo alegación de culpabilidad.

aceptó que la firma Zayas, Morazzani & Co., rindió un informe sobre un estimado de pérdidas. Sin embargo, afirmativamente sostuvo que había controversia en cuanto el contenido y las cuantías que surgían en el informe. A su vez, adujo que, conforme a la Sec. 5.5.1 de la fianza, los límites anuales de la cobertura no eran acumulativos y la responsabilidad total de la apelada no sería mayor al límite de responsabilidad estipulado en la cobertura que estuvo vigente al momento de la pérdida.

Tras varios trámites procesales, el 20 de noviembre de 2023, la Cooperativa Pepsi Cola presentó una *Moción Solicitando Sentencia Sumaria*. En su moción, propuso cuarenta y nueve (49) hechos sobre los que no existía controversia. Sostuvo que no había controversia sobre las pérdidas sufridas por la apelante, los hechos que causaron las mismas y el monto de esas pérdidas. Además, señaló que cuando Seguros Múltiples envió la carta del 12 de abril de 2021, había recibido el informe de la firma Zayas, Morazzani & Co., lo había examinado y sometido a la evaluación de su perito. Aseveró que la apelada no levantó reparo a los hechos narrados en el informe ni a la cuantía de la pérdida determinada. Por ello, argumentó que solo restaba aplicar el derecho, en específico, determinar el monto de la compensación a que tenía derecho la parte apelante por las pérdidas sufridas.

El 11 de diciembre de 2023, Seguros Múltiples presentó su *Oposición a Moción Solicitando Sentencia Sumaria*. En síntesis, se opuso a las pérdidas reclamadas para los años del 2000 a 2010, pues la información necesaria para poder hacer una determinación no estaba disponible. De otra parte, y en cuanto a las pérdidas reclamadas para los años 2011 a 2018, esbozó que, conforme a las cláusulas del contrato de fianza, el límite de responsabilidad de Seguros Múltiples no sería mayor que el estipulado en la cubierta vigente al momento de ser identificada la pérdida.

El 18 de junio de 2024, la Cooperativa Pepsi Cola presentó una *Moción Solicitando Autorización para suplementar "Moción Solicitando Sentencia*

*Sumaria"*. Allí, relató que, tras someter su moción dispositiva, el TPI concedió término a la apelada para responder a la moción, disponiéndose además en cuanto a dicho asunto que no se aceptarían réplicas, ni súplicas. Añadió que, luego de que Seguros Múltiples presentó su oposición a la solicitud de sentencia sumaria, el foro primario dio por sometido el asunto. De igual forma, la Cooperativa Pepsi Cola señaló que, durante estos trámites, en un pleito entre las mismas partes ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, bajo la codificación alfanumérica BY2019CV02108 había quedado pendiente luego de celebrarse el juicio dictarse la correspondiente sentencia. Según la apelante, ello ocurrió el 12 de abril de 2024 y dicha *Sentencia* advino final y firme el 1 de junio de 2024. La apelante sostuvo que este dictamen constituía cosa juzgada en la causa de epígrafe y solicitó al foro primario tomar conocimiento judicial del mismo. El 25 de junio de 2024, el TPI atendió este escrito declarándolo No Ha Lugar.

Así las cosas, el 10 de diciembre de 2024, el foro primario emitió su *Sentencia*. Allí, en virtud de la prueba presentada consignó cuarenta y dos (42) hechos que no estaban en controversia. A base de estos hechos y el derecho aplicable, determinó que la apelante no alcanzó a probar las alegaciones respecto a las pérdidas sufridas entre los años 2000-2010. A su vez, concluyó que los límites de responsabilidad estipulados en la fianza no eran acumulativos. Como resultado, el foro primario determinó que el límite máximo a pagar por Seguros Múltiples bajo la fianza de fidelidad a la Cooperativa Pepsi Cola ascendía a $302,000.00. Inconforme, el 24 de diciembre de 2024, la apelante presentó una *Moción de Reconsideración*. Esta fue declarada No Ha Lugar el 13 de enero de 2025 mediante *Resolución Interlocutoria*.

En desacuerdo aún, la apelante presentó el recurso de epígrafe y señaló la comisión de los siguientes cuatro (4) errores.

**PRIMER ERROR**
"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE CACEP SOLO TIENE DERECHO A RECIBIR $302,000.00 POR LAS PÉRDIDAS SUFRIDAS DURANTE LOS AÑOS 2011 A 2018 INCLUSIVE."

**SEGUNDO ERROR**
"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL RECHAZAR LA APLICACIÓN DE COSA JUZGADA."

**TERCER ERROR**
"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, Y VIOLÓ EL DEBIDO PROCESO DE LEY A QUE TENÍA DERECHO LA APELANTE CUANDO NO LE PERMITIÓ PRESENTAR SU ALEGACIÓN DE COSA JUZGADA ANTES DE DICTAR SENTENCIA."

**CUARTO ERROR**
"ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA, SALA SUPERIOR DE SAN JUAN, AL DETERMINAR QUE LA RECLAMACIÓN POR LAS PÉRDIDAS SUFRIDAS POR CACEP CORRESPONDIENTE A LOS AÑOS 2000 A 2010, AMBOS INCLUSIVE, ES IMPROCEDENTE."

Atendido el recurso, el 11 de febrero de 2025, notificada el día siguiente, emitimos una *Resolución* en la que concedimos a Seguros Múltiples el término dispuesto en el Reglamento de este Tribunal, 4 LPRA Ap. XXII-B para presentar su alegato. Oportunamente, el 6 de marzo de 2025, Seguros Múltiples presentó su *Alegato en Oposición a Apelación*. Así, con el beneficio de la comparecencia de las partes, damos por sometido el asunto y resolvemos.

-II-

*A.*

La Sentencia Sumaria

El mecanismo procesal de la sentencia sumaria dispuesto en la Regla 36 de Procedimiento Civil, 32 LPRA, Ap. V., R. 36, permite resolver los asuntos de aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, no ameritan la celebración de un juicio. Cruz Velez v. CEE, 206 DPR 694 (2021), al citar a Mejías Montalvo v. Carrasquillo Martínez, 185 DPR 288 (2012) y otros. Así pues, conforme la discutida regla, procede dictar sentencia sumaria si de las alegaciones,

deposiciones y admisiones ofrecidas, más las declaraciones juradas y cualquier otra evidencia presentada se acredita la inexistencia de una controversia real y sustancial sobre algún hecho esencial y material. Deberá, también, justificarse por el derecho aplicable. Id., mencionando a Bobé et al. v. UBS Financial Services, 198 DPR 6 (2017) y demás.

Por otro lado, la parte que se oponga a la moción de sentencia sumaria, deberá así hacerlo dentro del término de veinte (20) días desde su notificación, cumpliendo con los requisitos de ley. Así pues, deberá efectuar una exposición breve de las alegaciones, los asuntos litigiosos o en controversia. También, deberá hacer referencia a los párrafos enumerados por la parte promovente que entiende están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. Véase, Regla 36.3(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b); Cruz Velez v. CEE; *supra*; y SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 432 (2013). Las meras afirmaciones no bastan. Meléndez González v. M. Cuebas, 193 DPR 100, 136 (2015). Esto es así, ya que cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una que permita concluir la existencia de una controversia real y sustancial sobre hechos relevantes y pertinentes. Abrams Rivera v. ELA, 178 DPR 914, 932 (2010) No obstante, el no presentarse oposición a una moción de sentencia sumaria no impide que el tribunal falle en contra del promovente de esta ya que esta "puede dictarse a favor o en contra del promovente, según proceda en derecho.". Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 DPR 563, 575 (1997).

Así, al evaluar los méritos de una solicitud de sentencia sumaria un tribunal podrá dictar sentencia sumaria si de los documentos sometidos ante su consideración surge que no existe controversia real sustancial en cuanto a ningún hecho material y solo restaría por resolver una controversia estricta de derecho. Regla 36.3(e) de Procedimiento Civil, 32

LPRA Ap. V R 36.3(e). Por el contrario, no procederá una moción de sentencia sumaria cuando (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. Cruz Velez v. CEE; *supra.*

En cuanto a la revisión judicial de una determinación sobre sentencia sumaria, es meritorio señalar que los foros apelativos nos encontramos en la misma posición que el foro primario. Por ello, debemos regirnos por la Regla 36 de Procedimiento Civil y aplicar los criterios de esta. No obstante, no podemos tomar en consideración evidencia que las partes no presentaron ante el TPI. Tampoco podemos adjudicar los hechos materiales en controversia, por ser una tarea que le compete al foro de instancia luego de celebrarse un juicio. Meléndez González et al. v. M. Cuebas, *supra,* pág. 118.

*B.*

El Código de Seguros y la interpretación de las cláusulas de una póliza de seguro

El contrato de seguro es aquel acuerdo mediante el cual una persona se obliga a indemnizar a otra o a pagarle o proveerle un beneficio específico o determinable al producirse un evento incierto previsto en el mismo. Art. 1.020 del Código de Seguros, 26 LPRA sec. 102. Véase también, Rivera Matos v. ELA, *supra.* En este, el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota periódica, en virtud de la que se obliga a responder por la carga económica que recaiga sobre el asegurado de ocurrir un suceso especificado en el contrato. ECP Incorporated v. OCS, 205 DPR 268 (2020), citando a S.L.G. Francis-Acevedo v. SIMED, 176 DPR 372 (2009) y otros allí citados. Así pues, la función primordial de una póliza de seguro es establecer un mecanismo para transferir un riesgo y de esta

manera proteger al asegurado de ciertos eventos identificados en el contrato de seguros. Savary et al. v. Mun. Fajardo et al., 198 DPR 1014, 1023 (2017), citando a R.J. Reynolds v. Vega Otero, 197 DPR 699 (2017) y otros.[2]

El Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.*, (Código de Seguros) es la ley que reglamenta las prácticas y los requisitos del negocio de seguros. Jiménez López et al v. SIMED, 180 DPR 1 (2010). Tal negocio, está revestido de un alto interés público, por lo que ha sido regulado ampliamente por el Estado. Molina v. Plaza Acuática, 166 DPR 260, 266 (2005). Conforme establece el Código de Seguros, todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta. 26 LPRA sec. 1125. Así pues, corresponde interpretar el lenguaje plasmado en la póliza en su acepción de uso común general, sin ceñirse demasiado al rigor gramatical. Rivera Matos v. ELA, *supra,* al citar a Jiménez López et al. v. Simed, *supra*; SLG Francis-Acevedo v. SIMED, *supra*; y Echandi Otero v. Stewart Title, 174 DPR 355 (2008). Asimismo, las cláusulas de la póliza se examinarán desde el punto de vista de una persona normal de inteligencia promedio que fuese a adquirir el seguro. Rivera Matos v. ELA, *supra,* mencionando a S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48 (2011).

En cuanto al ejercicio de interpretación, es menester establecer que los términos del contrato de seguro se consideran claros cuando su lenguaje es específico, sin que dé lugar a dudas, ambigüedades o sea susceptible de diferentes interpretaciones. Sin embargo, toda vez que el contrato de seguro es uno de adhesión, redactado en su totalidad por el asegurador, aquellas cláusulas dudosas o ambiguas deben interpretarse liberalmente en

---

[2] Se denomina póliza el documento donde se consignan los términos que rigen el contrato de seguro. Art. 11.140(1) del Código de Seguros, 26 LPRA sec. 1114(1).

beneficio del asegurado para hacer cumplir el designio intrínseco de la póliza: dar protección al asegurado. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880 (2012). Igualmente, será necesario examinar si existen cláusulas de exclusión en el contrato por virtud de las que la aseguradora exceptúa determinados eventos, riesgos o peligros de la cubierta. Viruet et al. v. SLG Casiano-Reyes, 194 DPR 271 (2015). Tales exclusiones deben interpretarse restrictivamente en contra del asegurador. No obstante, si los términos de las cláusulas de exclusión son claros y aplican a una situación determinada, no podría responsabilizarse a la aseguradora por aquellos riesgos expresamente exceptuados. Id., pág. 279.

Cabe destacar que le corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro. Por su parte, es la aseguradora quien tiene que evidenciar que aplica alguna exclusión. Rivera Matos v. ELA, *supra*, citando a Insurance Claims and Disputes, 6ta ed., St. Paul, Minn., Ed. Thompson Reuters, 2013, Sec. 9.1, págs. 9-2 y 9.6 (2013).

C.

*La doctrina de cosa juzgada*

La doctrina de cosa juzgada que decreta el Art. 1204 del derogado Código Civil de Puerto Rico del 1930, 31 LPRA ant. sec. 3343[3], impide que, emitida una sentencia en un pleito anterior, las mismas partes litiguen otra vez en un posterior litigio las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas y aquellas que pudieron haberse litigado. Fonseca v. Hosp. HIMA, 184 DPR 281 (2012); Mun. de San Juan v. Bosque Real S.E., 158 DPR 743, 769 (2003). Conforme el citado artículo, para que la presunción de cosa juzgada surta efecto en otro juicio se requiere que

---

[3] El 28 de noviembre de 2020 entró en vigor el Código Civil de 2020 aprobado mediante la Ley Núm. 55-2020. Este nuevo código **no** contiene una disposición legal equivalente a la doctrina de cosa juzgada establecida en el Código Civil de 1930. No obstante, la aplicación de esta doctrina permanece vigente por la jurisprudencia ya establecida.

entre el caso resuelto por sentencia y aquel en el que se invoca, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Méndez vs. Fundación, 165 DPR 253, 267 (2005). Cuando la doctrina de cosa juzgada alude a la identidad entre las cosas, se refiere al "objeto o materia sobre la cual se ejercita la acción". Lausell Marxuach v. Díaz de Yañez, 103 DPR 533, 535 (1975). Para determinar si existe o no identidad de cosas, debemos cuestionar si al tomar una determinación sobre el objeto de una demanda en el caso ante nuestra consideración, nos exponemos a contradecir una decisión anterior en cuanto al mismo objeto. A&P Gen. Contractors v. Asoc. Caná, 110 DPR 753, 764-765 (1981).

La doctrina de cosa juzgada está fundamentada en consideraciones de orden público y necesidad. De una parte, vela por el interés gubernamental en que se finalicen los pleitos y busca dar la debida dignidad a los fallos de los tribunales. Por otro lado, se interesa no someter a los ciudadanos a las molestias de tener que litigar dos veces una misma causa. Rodríguez Rodríguez v. Colbert Comas, 131 DPR 212, 218-219 (1992); Pérez v. Bauzá, 83 DPR 220, 225 (1961). Empero, la aplicación de la doctrina de cosa juzgada no procede de forma inflexible y automática cuando hacerlo derrotaría los fines de la justicia o consideraciones de orden público. Parrilla v. Rodríguez, 163 DPR 263, 269 (2004).

**-III-**

Mediante el recurso que nos ocupa, la apelante nos solicita la revisión del dictamen emitido por el foro primario el 10 de diciembre de 2024. A tales efectos, en primer lugar, alega que el TPI incidió al determinar que la Cooperativa Pepsi Cola solo tenía derecho a recibir $302,000.00 por las pérdidas sufridas durante los años 2011-2018 debido a los límites de responsabilidad estipulados en el contrato de fianza. Explica pues, que según el inciso 2 del segundo párrafo de la Sec. 5.5.1 de la fianza, los límites

de responsabilidad aplicaban para cada año de vigencia en que ocurrieron las pérdidas y no como un fondo único. Señala además que, aunque las disposiciones del inciso 3 disponían que los límites anuales no serían acumulativos, del texto se desprende que la cobertura aplicable era cuando ocurrió la pérdida y no cuando fue identificada. Por eso, y conforme a lo resuelto por el Tribunal Supremo en Universal Ins. v. Popular Auto, LLC, *supra*, alega que el monto de la fianza emitida en un año particular responde por las pérdidas sufridas en ese año y no como un fondo único. Por ello, arguyó que el límite máximo aplicable es correspondiente al año que ocurrió la pérdida y no como un fondo global.

De otro lado, en su segundo señalamiento reclama que el TPI incidió al rechazar la aplicación de cosa juzgada. Esboza que las controversias esenciales del pleito constituyen cosa juzgada puesto que, en otro pleito, sobre las mismas cláusulas de la fianza y entre las mismas partes, se había emitido una sentencia que era final y firme. Por ello, sostiene que en el presente caso se cumple con los elementos de cosa juzgada, a saber: identidad entre las cosas, las causas, las personas de los litigantes y la calidad en que lo fueron.

A su vez, al discutir su tercer señalamiento la apelante reclama por parte del TPI violación a su derecho a un debido proceso de ley al no permitírsele presentar su reclamo de cosa juzgada antes de dictar *Sentencia*. Específicamente, manifiesta que dicha moción podía adjudicar controversias esenciales del caso de modo definitivo y que hubo justa causa para no haberse presentado antes. Por esta razón, arguye que denegar la solicitud constituyó un abuso de discreción por parte del tribunal, así como una violación al derecho a ser oído garantizado por el debido proceso de ley.

Por último, y en cuanto al cuarto error señalado, la Cooperativa Pepsi Cola alega que se equivocó el foro primario al resolver que su

reclamación por las pérdidas sufridas durante los años del 2000 a 2010 era improcedente. Con tal propósito, expone que Seguros Múltiples estaba obligada a resolver su reclamación para los años de 2000 a 2010 y levantar todas las defensas que tuviera. Razona que, al no hacerlo, la apelada aceptó la procedencia de la reclamación y renunció a presentar defensas contra la misma.

También, argumenta que no tenía que establecer con certeza matemática su reclamación para que esta procediera. Particularmente expone que el informe rendido por Zayas Morazzani & Co., indicó que dentro del periodo del 2000 a 2010, se emitieron certificados por $3,200,000.00 que no fueron registrados en los libros de la Cooperativa Pepsi Cola hasta el año 2017 y que, de esas sumas, al menos $1,650,000 no ingresaron a sus cuentas bancarias. A tal efecto, manifiesta que en el año 2017 la señora Martínez registró transacciones por aproximadamente $11,500,000.00 entre los cuales estaban los $3,200,000.00. Explica que dicha entrada de contabilidad fue parte de las actuaciones que la señora Martínez llevó a cabo para encubrir su fraude, del cual eventualmente se declaró culpable. Arguye pues que lo anterior era suficiente para establecer la reclamación de esos años.

Finalmente, la apelante alega que el TPI no debió desestimar su reclamación para los años 2000 a 2010. Afirmativamente, arguye que la solicitud de sentencia sumaria ante la consideración del foro primario fue presentada por la parte demandante del caso, por lo que si el TPI entendía que no se había establecido que debía dictarse sentencia sumaria a su favor en cuanto a este periodo, lo procedente era declararla No Ha Lugar y continuar con los procedimientos. Más aún, según señala, cuando durante el descubrimiento de prueba anunció que para probar su caso contaba con prueba oral y pericial en adición a la evidencia documental sometida.

Seguros Múltiples, por su parte, al oponerse al recurso argumenta que la *Sentencia* dictada fue correcta en derecho y conforme a la prueba presentada. Asevera que la fianza en controversia es una póliza de descubrimiento y no de ocurrencia. Explica que la referida póliza se activa al momento en que la pérdida es descubierta y notificada, no al momento en que ocurre el acto deshonesto. Así, indica que, conforme a las estipulaciones de la fianza, las coberturas no son acumulables y que la misma provee un periodo de un año, a partir de su cancelación o terminación, para el descubrimiento de pérdidas que ocurrieron durante su vigencia.

De igual forma, señala que lo resuelto en Universal Insurance Company v. Popular Auto, LLC, *supra*, no era aplicable a las circunstancias del pleito de epígrafe. Exactamente, sostiene que el referido caso era sobre una fianza de concesionarios de autos para proteger a terceros perjudicados mientras que en el presente recurso la fianza no protege a terceros sino al asegurado. Esto, según la apelada la convierte en un contrato de seguro y no en una fianza tradicional. Por último, Seguros Múltiples rechaza la aplicación de la doctrina de cosa juzgada al presente caso. Expresa que el caso BY2019CV02108 fue sobre circunstancias, periodos de tiempo y personas involucradas distintas a las que se discuten en la presente reclamación. Además, señala que ambos tribunales tienen la misma jerarquía, por lo que no están sujetos a las determinaciones del otro.

Debido a que el dictamen que se apela atiende una moción de sentencia sumaria, según ordena nuestro ordenamiento que hagamos, hemos examinado la solicitud de sentencia sumaria de la apelante, así como la oposición que frente a ella interpuso la parte apelada. Efectuado este análisis, encontramos a las partes en cumplimiento con las disposiciones relativas a la sentencia sumaria arriba citadas. Igualmente, concluimos que no existen hechos medulares en controversias que impidan dictar sentencia

sumaria en el pleito de epígrafe, por lo que resta solamente determinar la corrección de la aplicación del derecho.

En la *Sentencia* apelada, el TPI tras evaluar la sección 5.5.1 de la fianza concluyó que la apelante solo tenía derecho a recibir $302,000.00. Al así hacer, expuso que "[l]os límites de responsabilidad de la fianza establecen que la responsabilidad total de Seguros Múltiples con respecto a una perdida no será superior al límite de responsabilidad estipulado en el endoso sobre límites de cobertura que esté vigente al momento de la pérdida. En consecuencia, y conforme a lo dispuesto en el contrato de fianza que establece que los límites no son acumulativos, es un hecho que el límite aplicable es el estipulado en el endoso vigente al momento de la pérdida." De igual forma, enunció que "[a]l establecer el límite de responsabilidad máximo estipulado en el endoso, resulta forzoso concluir que el endoso vigente correspondiente al año 2018 fijó un límite máximo de cobertura por falta de honestidad (Cobertura A) que ascendía a $300,000. Tal como se establece en la sección 5.5.1, **los límites anuales de la cobertura no serán acumulativos**." (Énfasis en el original).

Al impugnar esta conclusión, la apelante argumenta que las disposiciones de la aludida sección 5.5.1 eran contradictorias, Por tal razón, reclama que conforme establece nuestro ordenamiento jurídico, cualquier duda debería resolverse a favor del asegurado, en este caso a su favor. A su vez, y como arriba mencionamos, asevera que, según el inciso 2 del segundo párrafo de la Sec. 5.5.1, el límite máximo aplicable a cada cobertura es el año de vigencia cuando ocurrió el daño.

Es correcto que en aquellas situaciones en las que existan cláusulas dudosas o ambiguas, estas deben interpretarse liberalmente en beneficio del asegurado para hacer cumplir el designio intrínseco de la póliza, o sea, dar protección al asegurado. No obstante, este principio hermenéutico no opera cuando los términos del contrato de seguro son claros y específicos,

sin que dé lugar a dudas, ambigüedades o sean susceptibles de diferentes interpretaciones. Maderas Tratadas v. Sun Alliance et al., *supra*.

En lo pertinente, la Sec. 5.5.1 dispone:

Máxima: La responsabilidad máxima de la cooperativa aplicable a la Sección 2.1 (Cobertura A); Sección 2.2 (Cobertura B); 2.3 (Cobertura C); Sección 2.4 (Cobertura D); Sección 2.5 (Cobertura D); Sección 2.7 (Cobertura G); Sección 2.9 (Cobertura I); Sección 2.10 (Cobertura J); Sección 2.11 (Cobertura K), **será la que se indica en el endoso sobre límites de coberturas aplicables expedido por la cooperativa en la fecha efectiva de la fianza o en la fecha de su último aniversario.** Disponiéndose que el límite de la Cobertura D será igual al de la Cobertura B, el de la Cobertura I y K, será igual al de la Cobertura A, y el de la Cobertura J, no excederá del 15% del límite de la cobertura A, sujeto a un máximo absoluto de $500,000.00. No obstante, a petición del asegurado y a opción de la cooperativa, el límite de la cobertura J, podrá aumentar mediante endoso sujeto al pago de la prima adicional correspondiente.

Aplicarán, además, las siguientes condiciones: **(1) Cada límite establecido en el referido endoso para cada una de las distintas Coberturas será la obligación máxima de la cooperativa para un mismo suceso o evento, e independientemente del número de personas y locales del asegurado involucrados en dicho suceso o evento. (2) En el caso de pérdidas que se vayan acumulando a través de los distintos años de vigencia de esta fianza, la responsabilidad máxima de la cooperativa por concepto de pérdidas imputables a cada uno de dichos años no excederá en ningún caso de los límites máximos aplicables a cada tipo de cobertura en el año de vigencia de la fianza en que ocurrieron las pérdidas. (3) Independientemente del número de años en que esta fianza haya estado o permanezca en vigor, y del número e importe de las primas pagadas o a pagarse, los límites anuales de la cobertura no serán acumulativos, y la responsabilidad total de la cooperativa con respecto a una pérdida, no será mayor que el límite de responsabilidad estipulado en el ENDOSO SOBRE LIMITES DE COBERTURAS APLICABLES, que esté vigente al momento de la pérdida.** (4) La responsabilidad máxima aplicable a la Sección 2.6 (Cobertura F) y a la Sección 2.8 (Cobertura H) se regirá además por lo dispuesto en las secciones 3.3 y 3.5, respectivamente, de la fianza. (5) Toda pérdida o daño deberá ser descubierto dentro del periodo de descubrimiento que establece la Sección 5.6 con sujeción a las disposiciones de las Secciones 5.5.5 y 5.7 respecto de las pérdidas que hayan ocurrido antes de la fecha de vigencia de esta fianza.[4] (Énfasis suplido)

Examinada la Sec. 5.5.1 del contrato de fianza en conjunto con todos los términos y condiciones que en este se expresan, juzgamos que el texto de la transcrita sección es claro y libre de ambigüedades. Primero, del contenido enfatizado se desprende que, independientemente del número de años que la fianza haya estado vigente, los límites anuales de cobertura

---

[4] *Fianza General de Fidelidad para Cooperativas de Ahorro y Crédito*, anejo 2, págs. 19-20. Entrada Núm. 42 del Sistema Unificado de Manejo y Administración de Casos (SUMAC)

no serán acumulativos. A su vez, estas disponen que la responsabilidad total de la apelada no será mayor que el estipulado en el endoso sobre límites de coberturas aplicables que esté vigente al momento de la pérdida.

Ahora bien, además de lo antes señalado, la cláusula transcrita contiene un lenguaje particular que nos parece importante destacar. Así, observamos que el inciso 5 de la reproducida sección – subrayada arriba para fácil identificación- indica que toda pérdida o daño debe ser descubierta dentro del periodo de descubrimiento que establece la Sec. 5.6. Al consultar esta particular sección, apreciamos que la misma dispone en cuanto al periodo de descubrimiento lo siguiente: Esta Fianza provee un periodo de un año, a partir de su cancelación o terminación, para el descubrimiento de pérdida que ocurrieron durante su vigencia.[5] Este particular lenguaje nos mueve a determinar que los límites máximos aplicables de la fianza son aquellos vigente al momento de descubrir y notificar la pérdida y no cuando ocurrieron las pérdidas. Asimismo, y basándonos en dicho texto, resolvemos que lo resuelto en Universal Ins. v. Popular Auto, LLC, *supra*, no conlleva una aplicación automática de lo allí resuelto como parece proponer la apelante. El así hacerlo, conllevaría resolver la interrogante planteada en el presente pleito en abstracción de sus circunstancias particulares.

El contrato de fianza aquí en controversia establece de forma clara y contundente que los límites de coberturas vigentes al momento del descubrimiento de una pérdida no son acumulativos, por lo que el límite de responsabilidad sería aquel estipulado en el endoso. **A su vez, como mencionamos, la fianza establece sin lugar a duda que toda pérdida o daño a ser reclamado a su amparo debía ser descubierto dentro del plazo que la fianza establecía; o sea, un (1) año, a partir de su cancelación o vencimiento.** Al tomar esto en consideración, vemos que la reclamación de

---

[5] *Id.* A la pág. 21.

la apelante incluyó pérdidas o daños que fueron conocidas cuando el plazo de descubrimiento de un año establecido en la Sección 5.6 había vencido. Dejándonos guiar por el lenguaje del contrato de fianza, en el caso de autos solamente procedía la reclamación de las pérdidas ocurridas en el año 2017, así como aquellas ocurridas y reclamadas dentro del año 2018. En cuanto a las pérdidas del año 2017, del expediente judicial surge que el 7 de marzo de 2018, el Síndico Administrador de la apelante reclamó haber tenido pérdidas bajo la cobertura de Fidelidad. O sea, dentro del año contemplado como periodo de descubrimiento de prueba. Por su parte, los daños descubiertos para el 2018, fueron reclamados ese mismo año, por lo que son cubiertos dentro de la fianza para dicho año. En consideración de estos hechos, Seguros Múltiples debió pagar la reclamación sometida por la apelante para ambos años.

No existe controversia alguna en cuanto a que la pérdida total reclamada para el año 2017 por Cooperativa Pepsi Cola fue de $347,000.00.[6] De la misma manera, es un hecho incontrovertido que para el 2018, la apelante reclamó la suma de $30,975.00. El límite de cobertura de la fianza para estos dos años era: (a) $300,000.00 sobre fidelidad, con un deducible de $3,000.00 y un coaseguro de 10% de toda pérdida en exceso del deducible, sin exceder el coasegurado de $25,000.00; (b) $45,000.00 por negligencia; y (c) $2,000.00 para gastos de intervenciones.[7] Por consiguiente, Seguros Múltiples debió pagar a la Cooperativa Pepsi Cola $302,000.00 por las pérdidas reclamadas para el año 2017, así como $32,975.00 por los daños reclamados para el año 2018.  El TPI no se equivocó al no conceder el pago de lo reclamado para los años 2010 al 2016. No obstante, modificamos la *Sentencia* apelada a los fines de establecer que la reclamación procedía para los años 2017 y 2018 y enmendar las cantidades a ser pagadas.

---

[6] Determinación de Hechos núm. 18; página 525 del *Apéndice*.
[7] Determinaciones de Hechos núm. 36, 39 y 40.

Modificada en cuanto al pago, la *Sentencia* apelada debe ser sostenida en cuanto al resto. Esto significa que no encontramos cometidos el segundo ni el tercer error señalado por la apelante en su recurso. Veamos porqué.[8]

Como arriba citamos, la doctrina de cosa juzgada impide que, emitida una sentencia **en un pleito anterior**, las mismas partes litiguen otra vez **en un posterior litigio** las mismas causas de acción y cosas, las controversias ya litigadas y adjudicadas y aquellas que pudieron haberse litigado. Fonseca v. Hosp. HIMA, *supra*; Mun. de San Juan v. Bosque Real S.E., *supra*. En otras palabras, para que pueda levantarse exitosamente la defensa de cosa jugada se requiere que entre el caso resuelto por sentencia y aquel que se invoca, exista la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron. Véase, Méndez vs. Fundación, *supra*.

Examinadas las controversias del caso de autos, a tenor con lo anterior, concluimos que no se encuentran presentes los elementos requeridos para aplicar la doctrina de cosa juzgada. Si bien entre el presente pleito y el caso BY2019CV02108 concurren la identidad entre las personas de los litigantes, la calidad con que lo fueron y la controversia versaba sobre el mismo contrato de fianza, no escapa a nuestra atención que la sentencia emitida en el último de estos pleitos se dictó cuando el caso de autos se encontraba ya por varios años ante la consideración del TPI. O sea, que no estamos ante una situación en la que luego de haberse dictado sentencia en un pleito, se inicia una nueva reclamación. Por el contrario, en el escenario ante nuestra consideración ambos pleitos fueron litigados de forma simultánea por varios años. Tampoco pasa desapercibido el hecho de que al momento en el que la apelante comparece ante el TPI a reclamar la

---

[8] Tratándose ambos señalamientos de la doctrina de cosa juzgada, atendemos y discutimos en conjunto.

aplicación de cosa juzgada, el foro primario ya había dado por sometido el asunto sobre si procedía o no la sentencia sumaria. A su vez, estimamos que el núcleo de los hechos en ambos casos difiere, por lo que no concurren todos los elementos requeridos por la doctrina de cosa juzgada. Siendo ello así, a nuestro juicio el foro primario no incidió al rechazar la aplicación de cosa juzgada.

Respecto al cuarto y último señalamiento de error, según surge del informe rendido por la firma Zayas, Morazzani & Co., se identificó que del año 2000 al 2010 se depositaron fondos por aproximadamente $3,200,000.00 en la Cooperativa Pepsi Cola. No obstante, con la información que tenían a su disposición no se logró identificar en cuales cuentas fueron depositados, aproximadamente $1,650,000.00. Es más, el perito reconoció que tampoco se pudo evaluar el manejo y uso de esos fondos debido a que las instituciones financieras sólo guardan información en sus sistemas por cinco (5) años.[9] Ante este cuadro, nos resulta forzoso concluir que la prueba presentada por la Cooperativa Pepsi Cola fue insuficiente para establecer su reclamación sobre las pérdidas atribuibles a los años 2000 al 2010. Es precisamente la falta de evidencia para establecer estas pérdidas por las que no podemos coincidir con la apelante cuando sostiene que el foro primario debió ordenar la continuación de los procedimientos en cuanto a las perdidas reclamadas para este periodo. Al final de cuentas, la *Sentencia* claramente establece que de la propia documentación que la apelante sometió surge que no existen registros que permitan determinar el uso y el manejo de los fondos recibidos para los años 2000 al 2010.

---

[9] Cooperativa de Ahorro y Crédito Empleados de Pepsi Cola (CACEP), Informe de Estimados de Pérdidas bajo las Coberturas 2.1-A de Fidelidad, 2.7-G Gastos de Intervenciones, 2.10-J Negligencia en el Cumplimiento del Deber, Anejo 3-1, pág. 13. Entrada Núm. 42 de SUMAC

En síntesis, evaluado los argumentos de las partes, así como los documentos que obran en el expediente determinamos que el TPI no cometió los errores imputados por la Cooperativa Pepsi Cola.

-IV-

Por los fundamentos antes expuestos, modificamos la *Sentencia* Apelada a los fines de establecer que procedía el pago de las pérdidas y los daños reclamados por la Cooperativa Pepsi Cola para los años 2017 y 2018. También alteramos la suma que debe serle pagada a la apelante, específicamente, procede el pago por la cantidad de $302,000.00 por las pérdidas reclamadas para el año 2017, así como de $32,975.00 por los daños reclamados para el año 2018. Así modificada la confirmamos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones